18749

Georgia A. TERRELL, Respondent, v. Norma Jean B. JAMES, Appellant

(159 S. E. (2d) 240)

*Messrs. Jefferies & Groves,* of Greenwood, *for Appellant,*

*William T. Jones, Esq.,* of Greenwood, *for Respondent,*

508

January 23, 1968.

Bussey, Justice.

The plaintiff-respondent in this action recovered a verdict for actual damages for personal injuries sustained when a station wagon driven by plaintiff was in collision with a pickup truck driven by defendant-appellant. The case was tried at the February, 1967, term of the Court of Common Pleas for Greenwood County, and the appeal is from an order of the circuit judge denying defendant's motion for a judgment *non obstante veredicto,* or in the alternative, for a new trial.

Defendant contends that she was entitled to a judgment *non obstante veredicto* in that (1) there was no proof of actionable negligence on her part, and that (2) plaintiff was guilty of contributory negligence as a matter of law. In deciding whether the defendant was so entitled, it is elementary that the evidence and all the inferences reasonably deducible therefrom have to be taken most strongly against the defendant and viewed in the light most favorable to the plaintiff. We, accordingly, proceed to

review the evidence and state the facts in the light of the foregoing principles.

The collision occurred at about 10:15 A. M. on February 20, 1965, a bright, clear, sunshiny day, at the intersection of Eastman Street and Oakwood Drive in Harris Plant Village, near Greenwood, South Carolina. Oakwood Drive runs north and south, and Eastman Street runs east and west, dead-ending in Oakwood Drive, both streets being thirty feet in width. Plaintiff was proceeding south on Oakwood Drive, and defendant was proceeding east on Eastman Street and making a left turn into Oakwood Drive. At the time of the collision there were no traffic signals or stop signs in place on either street. Prior to the collision, however, there had been a stop sign on Eastman Street at the intersection to Oakwood Drive, which sign, however, had at some time prior to the collision been improperly removed or destroyed. Precisely when this occurred the record does not disclose. The evidence of one witness would indicate that it was a year or two prior to the accident, while another witness testified that the sign was in place "shortly before" the collision, but admitted on cross examination that it could have been removed a considerable time before the date of the collision. The plaintiff testified that she thought the stop sign was still in place; did not know that it had been removed, and that she considered Oakwood Drive to be a "through street". Both plaintiff and defendant were thoroughly familiar with the area and defendant admitted that she knew at the time "that Oakwood was a through road or street". The highway patrolman who investigated the collision testified, without objection, that Oakwood was a "through street", and a passenger in the defendant's vehicle, also without objection, testified to the same effect.

The speed limit on Oakwood at the time was 35 miles per hour, and no witness testified that plaintiff was exceeding that limit. She herself testified that she was driving about 30 miles per hour and that as she approached the intersection she saw the truck driven by the defendant approaching the

intersection, and took her foot momentarily off of the accelerator, but the truck slowed as if it were going to stop at the intersection, upon which plaintiff returned her foot to the accelerator and when she was about thirty steps from the intersection she realized the truck was not going to stop, applied her brakes and swerved to the left. The defendant admittedly did not stop before entering the intersection and the collision occurred somewhere near the center of the intersection, the impact being between the left front corner of the vehicle driven by the plaintiff and the left door of the pickup truck. After the impact, the truck was largely in the northbound lane of Oakwood Drive, and the front end of plaintiff's car was to her left of the center of Oakwood Drive, the truck being at about a 45 degree angle to Oakwood Drive with its right front wheel near the eastern curb. There were no obstructions to the view of either driver, and as defendant approached and entered Oakwood Drive, she admittedly could see several blocks north on Oakwood Drive, but failed to see plaintiff until immediately before the impact.

The foregoing is not a complete recitation of the evidence, but it is quite sufficient, we think, to show that when viewed in the light of the applicable principles of law, there was abundant evidence of actionable negligence on the part of the defendant, and that the issue of contributory negligence, if any, on the part of the plaintiff was for the jury.

The defendant contends that the trial judge erred in instructing the jury the statutory law relating to both a "through" highway and a "stop" intersection, the court having charged Code Sec. 46-423 with respect to vehicles entering either a through highway or stop intersection and the rights and duties of the respective drivers, as well as applicable principles of law enunciated by this court in the fairly recent case of *Eberhardt v. Forrester*, 241 S. C. 399, 128 S. E. (2d) 687, it being defendant's contention that the intersection was an unmarked one and that

the statutory rights and duties of the parties at the intersection were governed only by Code Section 46-421.

We deem it unnecessary to quote at length from the recent *Eberhardt* decision, as the principles enunciated therein and charged in this case were clearly applicable under the facts disclosed by the evidence and, hence, correctly charged. Also correctly charged was Section 46-423, in its entirety, since there was evidence to the effect that Oakwood Drive was a "through street", and other evidence from which it could be inferred that it was not such a through street, but that the particular intersection was a "stop intersection" within the purview of Code Section 46-473.

The defendant asserts that there was error in allowing the introduction of photographs taken some time after the collision and at a time when the stop sign on Eastman Street had been replaced. Such photographs were offered simply as a fair representation of the appearance of the intersection at the time of the collision, with the exception of the stop sign, it being stipulated that the stop sign was not in place at the time of the collision, and the jury being so specifically instructed when the photographs were introduced. In the light of the stipulation and instruction, we see no error or prejudice, and defendant cites no authority for the contention that there was such.

Defendant's remaining contention is that the trial judge erred in refusing to admit into evidence a written statement which defendant contends the plaintiff signed for an insurance adjuster while still in the hospital, some four days after the collision. In the course of cross examination of the plaintiff the following occurred:

"Q. Mrs. Terrell, I hand to you two sheets of paper and ask if your signature appears on those?

"A. That looks like my signature; but I couldn't swear to it.

"Q. You couldn't swear that's your signature?

"A. No, I could not.

"Q. It looks like your signature?

"A. It—it appears to be, but I couldn't swear it's my signature.

"Mr. Jefferies: I offer this in evidence, Your Honor."

Upon objection, counsel for defendant withdrew the offer and asked that the purported statement be marked for identification, saying that he would offer it in evidence later.

It does not appear that counsel gave the plaintiff any opportunity to read or examine the purported statement, or that he attempted to cross examine her about the contents thereof. No other evidence was offered at any time to authenticate either her signature or the statement. Later in the trial and in the course of the presentation of the defendant's case, while a witness who knew nothing about the statement was on the stand, counsel reverted to the purported statement and again offered it in evidence. A colloquy then occurred between the court and counsel, with both of them trying to recall precisely what plaintiff had testified to with respect to her purported signature, following which the court said,

"I'll have to sustain the objection. I don't believe it has been properly identified."

Just a few moments later the judge, after some further discussion, said,

"As I recall, she said 'It looks like my signature', *and I am not sure that is sufficient.* I'll hear you on it at some future time. *I have an open mind on it."* (Emphasis added.)

Following this last statement by the judge, counsel continued the examination of the witness then on the stand, and, as far as the record shows, never again mentioned the purported statement of the plaintiff.

Under these circumstances, the question of whether the purported statement of the plaintiff was sufficiently authenticated or identified to make it admissible in evidence has not been properly preserved for review by us. When the statement was first offered, plaintiff was still on the stand and her testimony with reference to her purported signature was

fresh, and, moreover, if there was any doubt thereabout, she could easily have been further examined, but counsel at that time withdrew his offer. When the alleged statement was offered later in the trial, without any further effort at authentication, and while an unrelated witness was on the stand, counsel did not seek to have the testimony of plaintiff read back so that the judge could have before him precisely what plaintiff had testified to with reference to her alleged signature. The trial judge's last words with respect to the proffered statement were clearly a reservation of a ruling, rather than a ruling adverse to defendant, coupled with an invitation to counsel to be heard more fully on the matter at an appropriate time which invitation, however, counsel did not see fit to avail himself of.

The exceptions of the appellant are, in our view, without merit, and the judgment of the lower court is, accordingly,

Affirmed.

Moss, C. J., Lewis and Brailsford, JJ., and Lionel K. Legge, Acting Associate Justice, concur.