23424

Cellisa E. GAMBLE, Plaintiff v. Kevin D. STEVENSON, Thomas Brothers Construction Company and Southern Bell Telephone and Telegraph Company, Defendants, of which Southern Bell Telephone and Telegraph Company is Appellant, and Kevin D. Stevenson is Respondent. Appeal of SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY.

(406 S.E. (2d) 350)

Supreme Court

*Stephen G. Morrison* and *George K. Lyall*, both of *Nelson, Mullins, Riley & Scarborough*, Greenville, *Lisa D. Catt*, of *Nelson, Mullins, Riley & Scarborough*, Columbia, and *Fred A. Walters* and *Caroline N. Watson*, both of *Southern Bell Tel. and Tel. Co.*, Columbia, *for appellant.*

*Wallace K. Lightsey*, of *Wyche, Burgess, Freeman & Parham, P.A.*, Greenville, *for respondent.*

Heard Jan. 21, 1991.

Decided June 24, 1991.

CHANDLER, Justice:

Southern Bell appeals a jury verdict in favor of Respondent Kevin Stevenson (Stevenson) for actual and punitive damages.[1]

We affirm.

## FACTS

On January 16, 1987, Stevenson failed to stop at an intersection at which the "stop sign" had been removed; his car collided with one driven by Cellisa Gamble (Gamble) who had the right of way. The sign was found lying in an adjacent ditch.

The stop sign removal was occasioned by repairs to Southern Bell's telephone cable line. Eighteen days prior to the accident, Thomas Brothers Construction Co. (Thomas), a subcontractor of Southern Bell, removed the sign in the course of digging a pit to expose the cable.

Zane Hendrix (Hendrix), Southern Bell's cable repairman, personally instructed Thomas where to dig the pit; he observed the sign removal, and advised Thomas how it should be replaced. Phillip Church, pit foreman for Thomas, testified that he replaced the sign as instructed by Hendrix.

The testimony is conflicting as to whether the sign was properly replaced by Thomas, and whether Southern Bell performed repairs on the cable prior to the accident. However, a neighborhood resident testified that the sign was replaced, then down again, where it remained until the accident. He testified, further, that he observed men working on telephone wires within the pit after it was dug by Thomas. While he was unable to identify by whom the workmen were employed, the records of Thomas indicated that its employees worked on the pit only on December 30, 1986, when it was dug, and January 28, 1987, when it was closed.

Gamble sued Stevenson, Thomas and Southern Bell; Stevenson cross-complained against Thomas and Southern Bell. Verdicts were returned for Gamble and Stevenson. The

---

[1] The trial court reduced the actual damage award from $5,000 to $2,500.

jury awarded Stevenson $5,000 actual and $87,500 punitive damages against Southern Bell.[2]

## ISSUES

1. Should Special Interrogatories have been submitted to the jury?
2. Should the issue of agency have been submitted to the jury?
3. Was a vandalism statute properly included in the jury instruction?
4. Did Stevenson lack standing to cross-complain against Southern Bell?
5. Should punitive damages have been submitted to the jury?

## DISCUSSION

### I. SPECIAL INTERROGATORIES

Southern Bell requested that six Special Interrogatories be submitted to the jury. The Court reserved its ruling, stating that it "may consider asking the jury after the verdict. . . ."

Southern Bell failed to renew the request after the verdict and, therefore, the issue is not preserved. *See Terrell v. James*, 250 S.C. 506, 159 S.E. (2d) 240 (1968).

In any event, the determination as to whether special verdict forms should be submitted to the jury is within the sound discretion of the trial judge. *Smoak v. Liebherr-America, Inc.*, 281 S.C. 420, 315 S.E. (2d) 116 (1984).

We find no abuse of discretion.

### II. AGENCY

Southern Bell contends the issue of agency should not have been submitted to the jury, on the ground that Thomas, as a matter of law, was an independent contractor. We disagree.

The primary consideration in determining the existence of a master-served relationship is whether the purported master has the right to control the servant in the performance of his work, and the manner in which it is done. *Felts v. Richland*

---

[2] Neither Gamble's verdict, nor Stevenson's verdict against Thomas, is involved here.

*County,* — S.C. —, 400 S.E. (2d) 781 (1991) [*citing Standard Oil Company v. Anderson,* 212 U.S. 215, 29 S. Ct. 252, 53 L. Ed. 480 (1909)]. "The terms of a contractual agreement are not conclusive in determining the association between two parties where there is evidence outside the contract establishing an agency relationship." *Beasley v. Kerr-McGee Chemical Corp.,* 273 S.C. 523, 526, 257 S.E. (2d) 726, 727 (1979). If there are any facts tending to prove an agency relationship, the question is one for the jury. *Reid v. Kelly,* 274 S.C. 171, 262 S.E. (2d) 24 (1980).

The contract with Thomas was prepared by Southern Bell. While it states that Thomas is an independent contractor, Southern Bell's own employee, Hendrix, instructed Thomas where to dig the pit and how to replace the sign. Clearly, this rendered agency a jury issue.

### III. VANDALISM STATUTE

Southern Bell alleges the trial court erroneously charged the language of S.C. Code Ann. § 56-5-1030 (1976), a general vandalism statute. It contends that § 58-9-2020, relating to construction, maintenance and operation of telephone lines, is the exclusive statute applicable. We disagree.

S.C. Code § 56-5-1030 reads, in part:

> "*No person* shall willfully without lawful authority attempt to or in fact alter, deface, injure, knock down or remove any official traffic control device . . ." (Emphasis supplied.)

S.C. Code § 58-9-2020, reads, in part:

> "Any telegraph or telephone company . . . may construct, maintain, and operate its line . . . under, over, along and upon any of the highways or public roads of the State . . . *provided,* that such line is constructed so as not to endanger the safety of persons or to interfere with the use of such highways or public roads . . ." (Emphasis in original.)

Reliance by Southern Bell upon the recognized principle that, where two statutes appear to conflict the specific statute governs, is misplaced here.

The statutes are not in conflict.

Section 56-5-1030 contains terms and provisions not found in § 58-9-2020. Moreover, nothing in § 58-9-2020 specifically authorizes Southern Bell to remove stop signs. Had the General Assembly intended that telephone utilities be exempt from § 56-5-1030, it could have included such a provision.

We decline to address Southern Bell's contention that evidence of its failure to obtain a permit was improperly admitted. The ground now asserted is not supported by the objection raised at trial. *See Mickle v. Blackmon*, 252 S.C. 202, 166 S.E. (2d) 173 (1969), appeal after remand, 255 S.C. 136, 177 S.E. (2d) 548.

## IV. STANDING

The car being driven by Stevenson was owned by his father, but assigned to him following the accident. Southern Bell challenges Stevenson's standing, claiming absence of consideration for the assignment.

Although we have not previously addressed the issue, the general rule is that an assignee may recover from the debtor, despite absence of consideration for the transfer as between the assignor and the assignee. *See* 6 Am. Jur. (2d) *Assignments*, § 90. "If . . . the assignment is effective to pass legal title, the debtor cannot defend by interposing . . . objections which merely affect the validity of the assignment as between the assignee and assignor, or render it voidable at the latter's election. . . ." 6A C.J.S., *Assignments* § 115.

Southern Bell, being without standing to challenge validity of the assignment, may not challenge Stevenson's standing.

## V. PUNITIVE DAMAGES

Lastly, Southern Bell contends the award of punitive damages violates due process and equal protection. We disagree.

The due process implications of punitive damage awards was recently addressed by the United States Supreme Court in *Pacific Mutual Life Insurance Company v. Haslip*, — U.S. —, 111 S. Ct. 1032, 113 L. Ed. (2d) 1 (1991).

In *Haslip*, a punitive damage award of $840,000 withstood a due process challenge, despite the fact it was more than 200 times plaintiff's out-of-pocket expenses of $4,000. The Court stated: "We cannot say that the common law method for as-

sessing punitive damages is so inherently unfair as to deny due process and be *per se* unconstitutional." 111 S. Ct. at 1043. The Court noted that, although no bright line mathematical test can be drawn, "general concerns of reasonableness and adequate guidance from the court when the case is tried to a jury properly enter into the constitutional calculus." *Id.*

Apart from determining that Alabama's scheme for awarding punitive damages passes constitutional muster, however, the *Haslip* Court provided "no guidance as to whether any *other* procedures are sufficiently 'reasonable.' " *Haslip*, 111 S. Ct. at 1046-1047. (Scalia, J., concurring in the judgment.) (Emphasis in original.)

After careful review of *Haslip*, we conclude that the award of punitive damages, as guided by the trial court here, is sufficiently reasonable to withstand constitutional challenge.

*Haslip* addressed, with approval, three factors considered by Alabama Courts, in reviewing punitive damage awards. First, the trial court's jury instruction explains the nature, purpose and basis for the award; second, post-trial procedures enable the court to scrutinize the award; and, third, an appellate review process ensures that the award is reasonable and rational. 111 S. Ct. at 1044-45.

These procedural protections, the *Haslip* Court found, impose "a sufficiently definite and meaningful constraint on the discretion of Alabama fact finders in awarding punitive damages." 111 S. Ct. at 1045.

The Court, however, did not hold that each and every procedural protection furnished to Alabama defendants need be afforded to all defendants in all cases throughout the land. In our opinion, and as noted by *Haslip* itself, it is sufficient that the protections meet "general concerns of reasonableness" and are followed by "adequate guidance" from the trial court.

These criteria are met here.

In South Carolina, "punitive damages are allowed in the interest of society in the nature of punishment and as a warning and example to deter the wrongdoer and others from committing like offenses in the future." *Laird v. Nationwide Ins. Co.*, 243 S.C. 388, 396, 134 S.E. (2d) 206, 210 (1964). Moreover, they serve "as a vindication of private rights when it is proved that such have been wantonly, willfully or maliciously violated." *Harris v. Burnside*, 261 S.C. 190, 196, 199 S.E. (2d) 65, 68

(1973). Lastly, punitive damages may be awarded only upon a finding of actual damages. *Carroway v. Johnson,* 245 S.C. 200, 139 S.E. (2d) 908 (1965).

In the instant case, the trial judge's thorough jury charge included: the degree of recklessness requisite to a punitive damage award; that such an award was to "punish a defendant, or to deter or stop him and others from similar conduct in the future, that is, to make an example of the defendant"; that it must find actual damages before awarding punitive damages; and that, in calculating the amount of such damages, it may consider the defendant's ability to pay.[3]

As in *Haslip,* these instructions "reasonably accommodated [Southern Bell's] interest in rational decision making and [South Carolina's] interest in meaningful individualized assessment of appropriate deterence and retribution." 111 S. Ct. at 1044.

We next address the second aspect of *Haslip:* post-trial procedures for scrutinizing awards.

In South Carolina, post-trial relief in the form of motions for judgment notwithstanding the verdict, new trial, or new trial *nisi* are available to defendants claiming a verdict excessive. *See* S.C.R.C.P. Rules 50 and 59. Moreover, although there is no precise formula for measuring a punitive damage award, if the trial judge "is convinced that the amount awarded is over-liberal, he has the authority and corresponding *duty* to reduce the verdict by order *nisi.*" *Hicks v. Herring,* 246 S.C. 429, 436, 144 S.E. (2d) 151, 154 (1965). (Emphasis supplied.)

Here, the trial judge, in sustaining the punitive damage award, reduced the actual damages by fifty percent. In our view, this reduction of actual damages indicates a meaningful and adequate review by the trial court of the damages assessed by the jury. We find no infringement of Southern Bell's due process rights.

Hereafter, to ensure that a punitive damage award is proper, the trial court shall conduct a post-trial review and may consider the following: (1) defendant's degree of culpabil-

---

[3] We have previously held that the wrongdoer's ability to pay is a relevant factor in assessing punitive damages. *See Rogers v. Florence Printing Co.,* 233 S.C. 567, 106 S.E. (2d) 258 (1958). We reject Southern Bell's assertion that this was not a proper consideration for the jury.

ity; (2) duration of the conduct; (3) defendant's awareness or concealment; (4) the existence of similar past conduct; (5) likelihood the award will deter the defendant or others from like conduct; (6) whether the award is reasonably related to the harm likely to result from such conduct; (7) defendant's ability to pay; and finally, (8) as noted in *Haslip*, "other factors" deemed appropriate.

Upon completing its review, dedicated to the postulate that no award be grossly disproportionate to the severity of the offense, the trial court shall set forth its findings on the record.

The amount of damages, actual or punitive, remains largely within the discretion of the jury, as reviewed by the trial judge. *See Fennell v. Littlejohn*, 240 S.C. 189, 125 S.E. (2d) 408 (1962). We adhere to the precedent that this Court's review is limited. The rationale for vesting discretion in the trial court was aptly expressed in *Lucht v. Youngblood*, 266 S.C. 127, 138, 221 S.E. (2d) 854, 860 (1976):

> The reasonableness of the verdict was challenged before the trial judge and he reduced it. The fact he heard the evidence and was more familiar than we with the evidentiary atmosphere at trial gives him, we think, a better informed view than we have. This is particularly true when the elements of damage are intangibles and the appraisal depends somewhat on an observation of the [witnesses] and evaluation of their testimony.

Only when the trial court's discretion is abused, amounting to an error of law, does it become the duty of this Court to set aside the award. *Fennell v. Littlejohn, supra.*

Adverting to the $87,500 award here, we do not find it excessive. The conduct of Southern Bell, acting through its own employees and/or those of its agent, in allowing an intersection stop sign to be taken down and cast into a ditch, for a period in excess of two weeks, could well have been considered by the jury to be reprehensible and in utter disregard of the safety of drivers and pedestrians alike.

One may take judicial notice that a large franchised public utility should be acutely aware of the potential for disaster which is created by the removal of a warning traffic sign, more especially one designated "STOP." We find no due process violation.

Lastly, from oral arguments and a review of other decisions addressing the issue, we find no equal protection violation. *See, e.g., Hospital Authority v. Jones*, 259 Ga. 759, 386 S.E. (2d) 120 (1989); *Stoner v. Nash Finch, Inc.*, 446 N.W. (2d) 747 (N.D. 1989), *Germanio v. Goodyear Tire & Rubber Co.*, 732 F. Supp. 1297 (D.N.J. 1990).

The judgment is

Affirmed.

HARWELL, FINNEY and TOAL, JJ., concur.

C. TOLBERT GOOLSBY, Jr., Acting Associate Justice, concurs.