24387

Ralph M. "Mike" McGEE, as Personal Representative of the Estate of Donna L. McGee, Respondent/Appellant v. BRUCE HOSPITAL SYSTEM, Palmer M. Kirkpatrick, Jr., M.D., Alan Blaker, M.D., Reginald S. Bolick, M.D., and Joseph M. Pearson, M.D., both individually and d/b/a Pee Dee Surgical Group, P.A., and Margaret E. Lee, M.D., individually and d/b/a Pee Dee Radiology Group, Defendants, of whom Joseph M. Pearson, M.D., is Appellant/Respondent, and Alan Blaker, M.D., and Margaret E. Lee, M.D., are Respondents.

(468 S.E. (2d) 633)

Supreme Court

*Charles E. Carpenter, Jr.* and *Deborah Harrison Sheffield,* both of *Richardson, Plowden, Grier & Howser, P.A.,* Columbia, *for appellant/respondent* and *respondents.*

*William W. Doar, Jr.,* of *McNair & Sanford,* Georgetown, *for respondent Margaret E. Lee, M.D.*

*David A. Brown,* Aiken, *for respondent Alan Blaker, M.D.*

*Edwin P. Martin* and *Teresa A. Clemenz,* both of *Turner, Padgett, Graham & Laney, P.A.,* Columbia, *for appellant/respondent.*

*David W. Goldman, Diane M. Rodriquez,* and *Terrell T. Horne,* all of *Bryan, Bahnmuller, King, Goldman & McEleveen,* Sumter, *for respondent/appellant.*

Heard Jan. 9, 1996.

Decided Mar. 18, 1996; Reh. Den. Apr. 22, 1996.

MOORE, Justice:

This is a medical malpractice case. We affirm in part, reverse in part, and remand.

## FACTS

In October 1991 Donna McGee was treated at Bruce Hospital for solitary rectal ulcer syndrome. Treatment included

resting the bowels and intravenous (IV) nutrition. The IV infiltrated and was removed and another one could not be started. Donna's gastroenterologist, Dr. Kirkpatrick, ordered a subclavin central venous catheter, which is a central IV inserted in a vein close to the heart. Dr. Pearson, a surgeon, inserted the catheter and then requested an x-ray to determine its placement. Dr. Pearson reviewed the x-ray and, although the tip of the catheter was not ideally positioned, decided the risks of repositioning it outweighed any potential risks of leaving it in this position. Dr. Lee, a radiologist, also read the x-ray and did not recommend removal or repositioning of the catheter.

Early the next morning, Donna began to experience chest pains and pressure. Her vital signs were normal. Her pain worsened and Dr. Bolick, Dr. Pearson's partner, ordered a chest x-ray. After reading the x-ray, Dr. Bolick ordered the catheter pulled back 3 inches and another x-ray. Dr. Lee read this x-ray and stated the catheter was in a good position. Thereafter, Donna began to sweat profusely. The IV fluids were stopped and the catheter was flushed. Dr. Bolick ordered blood tests and an EKG to determine if Donna was having a heart attack. Since her vital signs had become abnormal, Dr. Kirkpatrick requested a cardiologist consult. Donna became lethargic and they could not obtain a blood pressure reading. Dr. Blaker, a cardiologist, arrived and took charge. Based upon an echocardiogram, he determined Donna was suffering from cardiac tamponade, a condition where fluid invades the pericardium surrounding the heart causing the heart to beat rapidly. This condition is fatal if not properly and promptly treated.

One treatment is to perform a pericardiocantesis to drain excess fluid from the pericardium. Dr. Blaker began this procedure and withdrew over 1 1/2 liters of fluid. Dr. Blaker, however, had actually punctured the liver and was withdrawing fluids from it. Donna went into full cardiac arrest and Dr. Pearson began an open-chest procedure in her room. The pericardium was found distended. Dr. Pearson drained the pericardium and began massaging her heart. A blood pressure and pulse were obtained. Donna was taken to the operating room where she became unstable again. After three hours of cardiac massage, a pacemaker was inserted and Donna was

taken to the intensive care unit where she died shortly thereafter.

Donna's husband, Mike McGee (McGee), brought these wrongful death and survival actions against the hospital and the doctors involved. The trial court directed a verdict for Dr. Blaker. The trial court also directed verdicts on punitive damages for the remaining defendants except Dr. Pearson. The jury returned a verdict against only Dr. Pearson and awarded the following: survival action—$500,000 actual damages and $2 million in punitive damages; wrongful death action—$500,000 actual damages and $1 million punitive damages. Dr. Pearson moved for a new trial which was denied. Dr. Pearson appeals the jury verdict and the McGees cross appeal the granting of directed verdicts against the other defendants.

## ISSUES

1) Did the trial judge erroneously allow Dr. Podgorny to testify as to the proper standard of care?
2) Do the punitive damages awards violate due process?
3) Are the awards of punitive damages in both the survival and wrongful death actions impermissible double recovery?
4) Did the trial judge err in directing a verdict for Dr. Blaker?
5) Did the trial judge err in precluding Dr. Schabel from testifying as an expert witness?

## DISCUSSION

1) Qualification of Dr. Podgorny

Dr. Pearson alleges the trial court erroneously qualified Dr. Podgorny as an expert. He contends simply because Dr. Podgorny is not a surgeon, he is not qualified to testify as an expert about the standard of care for surgeons as to the placement of subclavin catheters. We disagree.

The qualification of an expert witness and the admissibility of an experts testimony are matters within the trial court's discretion. *Creed v. City of Columbia*, 310 S.E. 342, 426 S.E. (2d) 785 (1993). We recently held in *Lee v. Suess*, — S.C. —, 457 S.E. (2d) 344 (1995), a doctor's limited exposure to a particular field merely goes to the weight of his testimony and not its admissibility. Further, in *Gooding v.*

*Saint Francis Xavier Hosp.*, — S.C. —, 454 S.E. (2d) 328 (Ct. App. 1995), the court held although an emergency room technician may not have been qualified to testify about the broad field of anesthesiology, he was well qualified to testify about the limited area of intubation.

Similarly here, although Dr. Podgorny may not have been qualified to testify about the specialty of surgery, he was well qualified to testify about the standard of care in the placement of the catheter. Dr. Podgorny is an emergency room doctor. However, he is Board certified in surgery and regularly inserts central venous catheters. Dr. Podgorny testified numerous specialists place these catheters, such as internists, surgeons, anesthesiologists, etc. He further testified the placement of these catheters is a relatively common procedure. We hold the trial court did not err in qualifying Dr. Podgorny.

The trial court refused to allow two other witnesses to testify as to the standard of care in placement of the catheters. He, however, did allow them to testify as to the ideal placement of these catheters. Dr. Pearson alleges this was error. However, other experts and Dr. Pearson testified about the ideal placement of the catheter. Therefore, even if admission of this evidence was error, it was harmless since it is merely cumulative to other evidence. *State v. Blackburn*, 271 S.C. 324, 247 S.E. (2d) 334 (1978).

Dr. Pearson then alleges the trial court erred in admitting the manufacturer inserts which are packaged with the catheters. Dr. Pearson argues the inserts can not establish the proper standard of care. The package inserts, however, where not offered to establish the standard of care. They were introduced to support a punitive award by showing Dr. Pearson's awareness of the conditions which might be caused by improper placement of the catheter. Furthermore, Dr. Pearson testified he was aware of the risks stated in the inserts. Therefore, if admission of the inserts was error, it was harmless since it was merely cumulative to other evidence. *Blackburn, supra.*

2) Due Process

Dr. Pearson alleges the punitive damages awards violate due process because they are not supported by the evidence. In order for the McGees to recover punitive

damages, there must be evidence Dr. Pearson's conduct was wilful, wanton, or in reckless disregard of the plaintiffs' rights. A conscious failure to exercise due care constitutes wilfulness. *McCourt v. Abernathy*, 318 S.C. 301, 457 S.E. (2d) 603 (1995); *Scott v. Fruehauf Corp.*, 302 S.C. 364, 396 S.E. (2d) 354 (1990). First, Dr. Pearson contends there is no evidence of recklessness to support the punitive damages award. We disagree.

This issue is procedurally barred as Dr. Pearson failed to raise it below. *Degenhart v. Knights of Columbus*, 309 S.E. 114, 420 S.E. (2d) 495 (1992). In any event, on the merits, there was testimony Dr. Pearson should have repositioned the catheter. Dr. Pearson argues he carefully weighed the risks of repositioning the catheter and decided to leave it in its original position. Dr. Pearson may have made a conscious decision to leave the catheter in its original position. However, this conscious decision does not mean he acted without wilfulness or recklessness. There was evidence to establish recklessness because several experts testified moving the catheter posed no risks.

Dr. Pearson also alleges there was no evidence of his ability to pay the punitive awards. The ability to pay is only one thing which the jury *can* consider. Evidence of ability to pay is not requisite to a punitive award. *See Rogers v. Florence Printing Co.*, 233 S.C. 567, 106 S.E. (2d) 258 (1958); *Elders v. Parker*, 286 S.C. 228, 332 S.E. (2d) 563 (Ct. App. 1985) (the jury may also consider the nature of the defendant's wrongdoing).

Dr. Pearson also alleges the trial court erred in conducting the review required by *Gamble v. Stevenson*, 305 S.C. 104, 406 S.E. (2d) 350 (1991). This issue was not raised below and is procedurally barred. *Degenhart, supra.* In any event, under *Gamble*, the trial court is not required to make findings of fact for each factor to uphold a punitive award. *Weir v. Citicorp*, 312 S.C. 511, 435 S.E. (2d) 864 (1994). Therefore, even if the trial court's finding on the ability to pay factor was not supported by the record, his findings on the remaining factors are sufficient to uphold the jury's award of punitive damages.

3) Double recovery

Dr. Pearson alleges the punitive awards for both the wrongful death and survival actions are impermissible double recovery. Dr. Pearson did not raise this issue until he moved for a new trial. Thus, this issue is procedurally barred. *See C.A.H. v. L.H.*, 315 S.C. 389, 434 S.E. (2d) 268 (1993) (an issue may not be raised for the first time in a motion to amend a judgment).

4) Directed verdict for Dr. Blaker

The trial court directed a verdict for Dr. Blaker on the ground the McGees had not presented any expert testimony from a cardiologist regarding the standard of care for performing a pericardiocentesis. The McGees contend the trial court erred. We agree. The trial court had previously ruled the McGees' expert, Dr. Podgorny, could not testify as to the standard of care for a cardiologist. Dr. Podgorny testified he performs pericardiocenteses and is familiar with the standard of care required in performing them. As with the placement of the catheters, although pericardiocenteses are performed by many different specialists, the standard is the same. *Gooding, supra.* Thus, we hold the trial court erred by failing to qualify Dr. Podgorny. The McGees did not have an expert because the trial court erroneously refused to qualify Dr. Podgorny as an expert in cardiology.

The trial court then refused to allow the McGees to call Dr. Warren Holland, an expert cardiologist, who was listed as an expert by Dr. Blaker. The McGees also stated in their pretrial brief they "may call two of the Defendant's expert witnesses: Steven Schable [sic], M.D., and Warren F. Holland, Jr., M.D. . . . ."[1]

Generally, the decision whether to exclude an expert witness is within the trial court's discretion. *Creed, supra.* The right to compel an expert to testify is subject to the traditional limitations which exclude prejudicial, misleading, or cumulative evidence. " 'An important consideration in determining whether one employed as an expert by one party may or should be required to testify as such at the

---

[1] In his order denying the McGees' motion for a new trial, the judge incorrectly stated the McGees' did not list Drs. Holland and Schabel as experts expected to be called.

instances of the adverse party is whether, under the particular circumstances, it is fair to do so.' " *Fenlon v. Thayer*, 127 N.H. 702, 506 A (2d) 319, 322 (1986) (citing *Annot.*, 77 A.L.R. (2d) 1182, 1192 (1961).

Here, we find the trial court abused his discretion by excluding Dr. Holland. The McGees' rights were substantially affected when the trial court excluded Dr. Holland. The McGees had retained an expert, Dr. Podgorny, who was disqualified by the trial court. The McGees had listed Dr. Holland. He had been deposed and was expected to be called at trial by Dr. Blaker. Under these particular circumstances, we hold in fairness the McGees should have been allowed to call Dr. Holland and the trial court abused his discretion by precluding him from testifying.

The trial court erred by not qualifying Dr. Podgorny and directing a verdict for Dr. Blaker. Therefore, we reverse the trial court's decision and remand for a new trial as to Dr. Blaker.

5) Dr. Schabel

The McGees contend the trial court also erred by precluding them from calling Dr. Warren Schabel, the defendant's expert radiologist. Upon learning the McGees wanted to call Dr. Schabel, Dr. Lee withdrew Dr. Schabel as an expert. Dr. Lee contended this precluded the McGees from calling him. The trial court refused to allow Dr. Schabel to be called.

In his deposition, Dr. Schabel stated at least three times Dr. Lee's actions were not the proximate cause of Donna's death. Dr. Schabel's testimony would not have established proximate cause. The McGees have not shown any prejudice from the trial court's decision to preclude the testimony of Dr. Schabel. Thus, we hold the trial judge did not err in denying the McGees' new trial motion.

Affirmed in part; reversed in part; and remanded.

FINNEY, C.J., TOAL, BURNETT, JJ., and GEORGE T. GREGORY, JR., Acting Associate Justice, concur.