614 S.E.2d 648

**Don MACKELA, Respondent,**

v.

**James BENTLEY d/b/a/ Lyman Auto Sales and Automotive Finance Corporation, Defendants,**

**of Whom, Automotive Finance Corporation is, Appellant.**

**No. 3976.**

Court of Appeals of South Carolina.

Submitted March 1, 2005.
Decided April 18, 2005.
Rehearing Denied June 22, 2005.

Jennifer L. Queen, of Summerville, for Appellant.

David Charles Alford, of Spartanburg, for Respondent.

STILWELL, J.

In this action for conversion, the jury returned a verdict in favor of Don Mackela in the amount of $13,320.23 plus interest in actual damages and $50,000 in punitive damages against Automotive Finance Corporation (AFC). AFC appeals. We affirm.[1]

## FACTS

In September 2001, Mackela owned a 1999 Dodge Grand Caravan. Mackela sought to purchase a second vehicle from James Bentley, d/b/a Lyman Auto Sales. Bentley allowed Mackela to park the Dodge on Bentley's used car lot and agreed to assist Mackela in the sale of the vehicle. Mackela retained title to the Dodge.

Bentley unlocked and showed the Dodge to potential buyers, but was not authorized to negotiate its sale. Although Bentley assumed he would receive some compensation if he sold the Dodge, Mackela and Bentley had no agreement regarding a price or a commission for Bentley. Mackela periodically checked on the vehicle from September 2001 to January 2002 and never noticed any stickers or other papers indicating Bentley was advertising the car.

AFC financed Bentley's purchases of new vehicles as the floor planner of Lyman Auto Sales. As part of the note, guaranty, and security agreement between Bentley and AFC, Bentley granted AFC a security interest in "[a]ll now owned or hereafter acquired inventory." Bentley defaulted on the AFC note. AFC served a warrant of attachment on Bentley and attached forty-two vehicles from Bentley's lot, including Mackela's Dodge. Mackela filed this action against AFC and

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

James Bentley, d/b/a Lyman Auto Sales, alleging conversion and seeking actual and punitive damages.

At trial, Mackela testified he called AFC to retrieve the Dodge after the attachment. When Mackela explained his ownership, the AFC representative said AFC took the Dodge because "it was there." The representative further told Mackela that AFC would not return the Dodge unless Mackela "paid for it." Mackela explained: "I'm already paying for it." The representative replied: "Well, you're going to have to pay for it again if you want to take it. We won't give you a release." When the finance company that held Mackela's note on the Dodge learned of the attachment, it refused further payments by Mackela and ultimately a judgment was entered against Mackela for approximately $13,000.

Bentley testified at trial that only fifty percent of the vehicles taken by AFC were Lyman Auto Sales inventory. The remaining vehicles, like Mackela's Dodge, were not owned by Lyman Auto Sales. Bentley explained that he attempted "on several occasions" to retrieve the vehicles from AFC but AFC refused to return the vehicles and the owners were forced to "get them back through different court orders."

AFC moved for a directed verdict on the ground that AFC was acting within its legal rights as to its collateral when it took control of Mackela's vehicle. The trial court denied AFC's motion. The jury returned a verdict in favor of Bentley and against AFC. The jury awarded Mackela actual damages of $13,320.23 plus interest and $50,000 in punitive damages.[2] The trial court denied AFC's post-trial motion for new trial or judgment notwithstanding the verdict. AFC appeals.

## LAW/ANALYSIS

On appeal from the denial of a motion for directed verdict, the appellate court may reverse only if no evidence supports the circuit court's ruling. *Steinke v. South Carolina Dep't of Labor, Licensing, & Regulation*, 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999). Credibility issues and conflicts in

---

2. On the Form 4 Order, the award is stated as $13,325.23. However, the trial court's written order calculating the total award including interest cites the award as $13,320.23.

testimony are for the jury. *Garrett v. Locke,* 309 S.C. 94, 99, 419 S.E.2d 842, 845 (Ct.App.1992).

## I. Conversion

AFC argues the trial court erred in denying its motion for a directed verdict on Mackela's conversion claim and its post-trial motion for new trial or judgment notwithstanding the verdict. We disagree.

A plaintiff claiming conversion may prevail based upon a showing of unauthorized detention of property, after demand. The plaintiff must show either title or right to possession of the property at the time of conversion. *Oxford Fin. Cos. v. Burgess,* 303 S.C. 534, 539, 402 S.E.2d 480, 482 (1991). A plaintiff's claim for conversion fails where the defendant proves a legal right to the property. *Kirby v. Horne Motor Co.,* 295 S.C. 7, 11, 366 S.E.2d 259, 261–62 (Ct.App.1988).

AFC asserts it had a legal right to Mackela's vehicle because of a valid security interest in Bentley's inventory. Specifically, AFC alleges Mackela's vehicle was collateral under the AFC–Bentley security agreement because the vehicle was on Bentley's lot as a consignment item. We disagree.

Under section 36–9–102 of the South Carolina Code, "collateral" includes "goods that are the subject of a consignment." S.C.Code Ann. § 36–9–102(a)(12)(C) (2003). The Code defines "consignment" as "a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale." S.C.Code Ann. § 36–9–102(a)(20) (2003). However, goods that are "consumer goods immediately before delivery" are specifically excluded from the statutory definition of consignment. S.C.Code Ann. § 36–9–102(a)(20)(C) (2003). "Consumer goods" are defined as "goods that are used or bought for use primarily for personal, family, or household purposes." S.C.Code Ann. § 36–9–102(a)(23) (2003).

Mackela testified he purchased the Dodge for his personal use, including the transportation of his wife to cancer treatments. We find the Dodge thus meets the statutory definition of a consumer good. Because the Dodge was a consumer good, it is excluded from the statutory definition of a consign-

ment and AFC's argument that it was collateral as a consignment fails. *See* S.C.Code Ann. § 36–9–102(a)(20) (2003). We find ample evidence to support the trial court's denial of AFC's directed verdict motion and post-trial motion for new trial or judgment notwithstanding the verdict.

## II. Punitive Damages

■ Relying exclusively on *Gamble v. Stevenson,* 305 S.C. 104, 406 S.E.2d 350 (1991), AFC argues the trial court erred in affirming the jury's award of punitive damages. We disagree.

■ Punitive damages are recoverable in conversion cases if the defendant's acts have been willful, reckless, and/or committed with conscious indifference to the rights of others. *Oxford,* 303 S.C. at 539, 402 S.E.2d at 482. The amount of damages, actual or punitive, remains largely within the discretion of the jury, as reviewed by the circuit court. *Gamble,* 305 S.C. at 112, 406 S.E.2d at 355. Only when the circuit court's discretion is abused, amounting to an error of law, does it become the duty of the appellate court to set aside the award. *Id.*[3]

The South Carolina Supreme Court enumerated eight factors to consider in determining whether a jury's award of punitive damages is proper: (1) the defendant's degree of culpability; (2) the duration of the conduct; (3) the defendant's awareness or concealment; (4) the existence of similar past conduct; (5) the likelihood the award will deter the defendant or others from like conduct; (6) whether the award is reasonably related to the harm likely to result from such conduct; (7) the defendant's ability to pay; and finally, (8) "other factors" deemed appropriate. *Gamble,* 305 S.C. at 111–12, 406 S.E.2d at 354.

In its order, the trial court specifically addressed each of the *Gamble* factors, finding AFC's conduct in this matter warranted the award of punitive damages. AFC admitted at trial that

---

**3.** AFC neither requests us to nor suggests that we must conduct a de novo review of the award of punitive damages in this case pursuant to *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001) and *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). We therefore limit our review to the trial court's *Gamble* review.

at the time it executed the writ of attachment, none of the vehicles on Bentley's lot were listed in the floor plan agreement. AFC ultimately returned numerous of the vehicles seized. The actions of AFC deprived Mackela of the use of his vehicle for eighteen months. AFC had other suits filed against it alleging similar conduct. The punitive damages award is just over three times the actual damages and is less than the $80,000 AFC claimed due from its account with Bentley.

We find the trial court expressly considered the *Gamble* factors in its review of the punitive damages award and made appropriate findings of fact as to each factor.

## CONCLUSION

Accordingly, the order on appeal is

**AFFIRMED.**

GOOLSBY and HUFF, JJ., concur.