763 S.E.2d 615

**Prakash and Urmila SOLANKI, Respondents,**

**v.**

**WAL–MART STORE # 2806, and Spartanburg County Sheriff's Office, Defendants,**

**Of whom Wal–Mart Store # 2806 is the Appellant.**

Appellate Case No. 2012–213247.

No. 5264.

Court of Appeals of South Carolina.

Heard March 5, 2014.

Decided Aug. 20, 2014.

Rehearing Denied Oct. 23, 2014.

Certiorari Denied March 4, 2015.

230

232

Regina Hollins Lewis and Mary Daniel LaFave, both of Gaffney Lewis & Edwards, LLC, of Columbia, for Appellant.

John David Hawkins and Charles Logan Rollins, II, both of The Hawkins Law Firm, of Spartanburg, for Respondents.

KONDUROS, J.

Wal–Mart Store # 2806 (Wal–Mart) appeals the trial court's award of punitive damages to Prakash and Urmila Solanki (collectively, the Solankis) in an action for gross negligence. It also appeals the trial court's denial of its post-trial motions for Judgment Notwithstanding the Verdict (JNOV) and for the reversal or reduction of punitive damages. We affirm.

**FACTS/PROCEDURAL HISTORY**

On November 27, 2009, "Black Friday," the Solankis went shopping at the Wal–Mart in Boiling Springs, South Carolina. After they selected their items, Mr. Solanki went to the self-checkout line; however, he experienced a problem with the register. Ryan Smalls, a Wal–Mart employee, attempted to help Mr. Solanki. When Smalls could not get the self-checkout machine to operate correctly, Smalls took Mr. Solanki to a cashier-assisted register. There were also problems with that

register. During the transaction, Mr. Solanki handed Smalls his debit card and identification. Smalls manually stenciled Mr. Solanki's debit card, which he used as a credit card because Mr. Solanki could not remember his pin number. However, the credit card information of Robin Martin was hand keyed into the register during this transaction. A receipt with Martin's credit card information was signed by Mr. Solanki and $144.70 was charged to her account. The Solankis left the store unaware of the mistake.

On December 1, 2009, Martin notified the Spartanburg County Sheriff's Office her credit card had been stolen and two unauthorized charges were on her account, including Mr. Solanki's purchase at Wal–Mart. Deputy Gina Cashion was assigned to the case. She requested Wal–Mart provide her with the video surveillance and receipts for the date and time of the unauthorized charges. Wal–Mart found one transaction for that date in the amount of $144.70. It provided Deputy Cashion with video surveillance of the transaction, a copy of the stenciled impression of Mr. Solanki's debit card, the itemized receipt, and the store's copy of the receipt showing Martin's credit card information with Mr. Solanki's signature.

Deputy Cashion tried to contact Mr. Solanki but was unsuccessful. Based on the information at her disposal, she obtained an arrest warrant for Mr. Solanki. He was arrested in Georgia in April 2010 and spent six nights in jail before he was transported to South Carolina where he posted bail. He was indicted on financial transaction card theft and financial transaction card fraud, but the indictments were dismissed on August 24, 2010.

Mr. and Mrs. Solanki filed a complaint against Wal–Mart and the Sheriff's Office for (1) negligence, (2) gross negligence and recklessness, (3) false imprisonment, (4) intentional infliction of emotional distress, (5) defamation and defamation per se, (6) assault, (7) battery, (8) malicious prosecution, and (9) loss of consortium.[1] The trial court directed a verdict for Wal–Mart on all causes of action except negligence and gross

---

1. The trial court granted a directed verdict on all claims against the Sheriff's Office except for the claims of false imprisonment and malicious prosecution. The jury returned a verdict in favor of the Sheriff's Office on both claims.

negligence. The jury returned a verdict against Wal–Mart for negligence. They awarded Mr. Solanki $50,000 in actual damages and $225,000 in punitive damages against Wal–Mart. They also found Mr. Solanki was comparatively negligent in the amount of 25%. Wal–Mart filed post-trial motions for JNOV, new trial *nisi* remittitur, reversal or reduction of punitive damages, or new trial pursuant to the Thirteenth Juror Doctrine. The trial court denied all of Wal–Mart's motions. This appeal followed.

## LAW/ANALYSIS

### I. Punitive Damages

 Wal–Mart asserts the Solankis presented insufficient evidence to submit the issue of punitive damages to the jury. Specifically, Wal–Mart maintains the Solankis presented no evidence at trial its actions were willful, wanton, or reckless. Instead, it argues this is a case of simple negligence, which is not subject to punitive damages. Furthermore, Wal–Mart contends the trial court erred in applying the gross negligence standard without first making a finding of willful, wanton, or reckless misconduct before submission to the jury.

Additionally, Wal–Mart argues the Solankis asserted a heightened duty of care for Wal–Mart beyond the duty a merchant owes to its customers. Wal–Mart maintains it was not under a heightened duty of care, and under the general duty of care a merchant owes to a customer, no facts were presented at trial that demonstrated Wal–Mart breached its duty. Wal–Mart contends the Solankis presented no evidence showing it deviated from industry standards by handing over the evidence in its possession to the Sheriff's Office without conducting its own investigation. We disagree.

 "In an action at law, on appeal of a case tried by a jury, the jurisdiction of the appellate court extends merely to the correction of errors of law, and a factual finding by the jury will not be disturbed unless a review of the record discloses no evidence that reasonably supports the jury's findings." *Wright v. Craft*, 372 S.C. 1, 18, 640 S.E.2d 486, 495 (Ct.App.2006). According to Rule 220(c), SCACR, an appellate court may affirm the lower court's judgment for any reason appearing in the record on appeal. *I'On, L.L.C. v.*

*Town of Mt. Pleasant,* 338 S.C. 406, 417, 526 S.E.2d 716, 722 (2000).

The standard of review as regards the refusal to grant a directed verdict is well established: In ruling on motions for directed verdict and JNOV, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions and to deny the motions where either the evidence yields more than one inference or its inference is in doubt. The trial court can only be reversed by this [c]ourt when there is not evidence to support the ruling below.

*Creech v. S.C. Wildlife & Marine Res. Dep't,* 328 S.C. 24, 28–29, 491 S.E.2d 571, 573 (1997) (internal quotation marks omitted).

■■ "The purposes of punitive damages are to punish the wrongdoer and deter the wrongdoer and others from engaging in similar reckless, willful, wanton, or malicious conduct in the future." *Clark v. Cantrell,* 339 S.C. 369, 378, 529 S.E.2d 528, 533 (2000). "Punitive damages also serve to vindicate a private right of the injured party by requiring the wrongdoer to pay money to the injured party." *Id.* at 378–79, 539 S.E.2d at 533.

■■ To receive an award of punitive damages, the plaintiff has the burden of proving by clear and convincing evidence the defendant's misconduct was willful, wanton, or in reckless disregard of the plaintiff's rights. *Austin v. Specialty Transp. Servs., Inc.,* 358 S.C. 298, 313, 594 S.E.2d 867, 875 (Ct.App. 2004). "A conscious failure to exercise due care constitutes willfulness." *McCourt ex rel. McCourt v. Abernathy,* 318 S.C. 301, 308, 457 S.E.2d 603, 607 (1995). The issue of punitive damages must be submitted to the jury if more than one reasonable inference can be drawn from the evidence as to whether the defendant's behavior was reckless, willful, or wanton. *Graham v. Whitaker,* 282 S.C. 393, 398, 321 S.E.2d 40, 43 (1984).

In light of *Gamble [v. Stevenson,* 305 S.C. 104, 111–12, 406 S.E.2d 350, 354 (1991) ], there are now three stages in this state to a trial court's review of punitive damages. First, the court must determine whether the defendant's conduct rises to the level of culpability warranting a punitive dam-

age award. If not, the issue of punitive damages may not be submitted to the jury. If so, the jury should be adequately instructed to assess an appropriate amount of damages. Second, the trial judge must conduct a post-trial *Gamble* review to ensure that the award does not deprive the defendant of due process. If the award is determined to violate the defendant's due process rights, then the trial court must either grant a new trial absolute, or a new trial *nisi* remittitur. If the award is determined not to violate the defendant's due process rights, then the trial court reaches the third inquiry, to wit, whether, in the exercise of its discretion, it finds the award excessive or inadequate.

*S.C. Farm Bureau Mut. Ins. Co. v. Love Chevrolet, Inc.*, 324 S.C. 149, 154, 478 S.E.2d 57, 59 (1996).

Negligence is the failure to exercise due care, while gross negligence is the failure to exercise slight care. *Clyburn v. Sumter Cnty. Sch. Dist. # 17*, 317 S.C. 50, 53, 451 S.E.2d 885, 887 (1994). "While punitive damages are recoverable for negligence so gross or reckless of consequences as to imply or to assume the nature of wantonness, willfulness or recklessness, yet they are not awarded in this state for mere gross negligence." *Bell v. Atl. Coast Line R. Co.*, 202 S.C. 160, 171, 24 S.E.2d 177, 182 (1943). "If a person of ordinary reason and prudence would have been conscious of the probability of resulting injury, the law says the person is reckless or willful and wanton, all of which have the same meaning—the conscious failure to exercise due care." *Berberich v. Jack*, 392 S.C. 278, 287, 709 S.E.2d 607, 612 (2011).

Gross negligence is ordinarily a mixed question of law and fact. *Clyburn*, 317 S.C. at 53, 451 S.E.2d at 887. "When the evidence supports but one reasonable inference, it is solely a question of law for [the] court, otherwise it is an issue best resolved by the jury.... In most cases, gross negligence is a factually controlled concept whose determination best rests with the jury." *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 144, 638 S.E.2d 650, 661 (2006). "[A] merchant is not an insurer of the safety of his customer but owes them only the duty of exercising ordinary care to keep the premises in reasonably safe condition."

*Pennington v. Zayre Corp.*, 252 S.C. 176, 178, 165 S.E.2d 695, 696 (1969).

The record contains no evidence the trial court imposed a heightened duty of care on Wal–Mart. At trial, the Solankis' attorney discussed his own belief that Wal–Mart should be subject to a heightened duty; however, the record does not indicate the trial court instructed the jury on a heightened duty.

We find the Solankis presented sufficient evidence of Wal–Mart's willful, wanton, or reckless misconduct to send punitive damages to the jury in two factual circumstances—the taking of the credit card information for the sale and the turning over of the credit card information to law enforcement. The trial court followed proper procedure in making this finding. At the close of all evidence, Wal–Mart moved for a directed verdict, asserting the Solankis had not proven gross negligence, and the trial court denied the motion. In its order denying Wal–Mart's post-trial motions, the trial court explicitly found sufficient evidence of willful, wanton, or reckless misconduct by Wal–Mart to send the issue to the jury. Particularly in light of the standard of review for directed verdict motions, we find sufficient evidence existed at the close of evidence to allow the issue of gross negligence to go to the jury. Wal–Mart attempted to run Mr. Solanki's credit card at least three times. When that was unsuccessful, the employee resorted to manually stenciling Mr. Solanki's credit card; however, the information hand-keyed into the cash register belonged to Martin. At the end of the transaction, the receipt presented had Mr. Solanki's signature but showed Martin's credit card information. These facts combined with Mr. Solanki's testimony that he did not use Martin's credit card could allow a reasonable jury to determine Wal–Mart's actions amounted to gross negligence. When reviewing these facts in the light most favorable to the Solankis, we find no error in the trial court's conclusions.

The trial court also found evidence was presented from which a reasonable jury could have concluded Wal–Mart was aware of the dangerous condition it created. It determined Wal–Mart knew the employee hand-keyed the transaction and testimony was presented Mr. Solanki did not present any card

but his own to the cashier. Therefore, viewing all facts in the light most favorable to the Solankis, the trial court determined it would be reasonable to conclude Wal–Mart was responsible for the error in processing the credit card. Furthermore, the trial court concluded Wal–Mart was responsible for the creation and production of the evidence used to arrest Mr. Solanki and it was in the best possible position to point out the discrepancies to the police officers.

## II. Post-trial Motions

██ Wal–Mart asserts the evidence was insufficient to sustain the grant of punitive damages. Therefore, the trial court erred in denying the motion to reverse or reduce the amount of punitive damages.

Regarding the motion for JNOV, Wal–Mart argues the denial of this motion was the first time the trial court made a finding of willful, wanton, or reckless misconduct by Wal–Mart. It maintains this was an error of law. Additionally, it asserts the trial court erred in its evaluation of the *Gamble* factors and the trial court's reasoning is insufficient to sustain an award of punitive damages under a clear and convincing standard. In response to the trial court's evaluation of the first *Gamble* factor (defendant's degree of culpability), Wal–Mart contends the hand keying of Mr. Solanki's credit card only speaks to simple negligence. Additionally, Wal–Mart argues that even if its response to the Sheriff's Office's request for information amounted to negligence, it was only simple negligence, and no evidence was presented Wal–Mart was aware of a dangerous condition it then failed to mitigate. Therefore, it contends the evidence was insufficient to sustain the award of punitive damages.[2] We disagree.

██ When reviewing a motion for JNOV, an appellate court must employ the same standard as the trial court. *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006). On appeal from an order denying a motion for JNOV, an appellate court views the evidence and all reasonable inferences in a light most favorable to the non-moving party.

---

2. Wal–Mart makes no argument regarding the *Mitchell, Jr. v. Fortis Ins. Co.*, 385 S.C. 570, 686 S.E.2d 176 (2009), factors.

*RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 331–32, 732 S.E.2d 166, 171 (2012).

■ In *Gamble*, 305 S.C. at 111–12, 406 S.E.2d at 354, the supreme court of South Carolina specified an eight-factor post-verdict review for trial courts to conduct to determine if a punitive damages award comports with due process. The factors are:

(1) defendant's degree of culpability; (2) duration of the conduct; (3) defendant's awareness or concealment; (4) the existence of similar past conduct; (5) likelihood the award will deter the defendant or others from like conduct; (6) whether the award is reasonably related to the harm likely to result from such conduct; (7) defendant's ability to pay; and finally, (8) . . . other factors deemed appropriate.

*Id.* The trial court is not required to make findings of fact for each factor to uphold a punitive damage award. *McGee v. Bruce Hosp. Sys.*, 321 S.C. 340, 346, 468 S.E.2d 633, 637 (1996).

"[W]e need dwell no longer upon the rationale, or upon the merits or demerits, of the doctrine [of punitive damages]. Acquiescence in it for almost two centuries justifies the conclusion that it is now agreeable to, and part of, the public policy of the state." *Rogers v. Florence Printing Co.*, 233 S.C. 567, 574–75, 106 S.E.2d 258, 261–62 (1958).

As previously noted, the Solankis presented sufficient evidence to send the issue of punitive damages to the jury. Accordingly, the trial court did not err in denying Wal–Mart's post-trial motion to reverse or reduce the amount of the punitive damages. We also disagree with Wal–Mart's proposition it was an error of law for the trial court to explicitly state its finding of willful, wanton, or reckless misconduct for the first time in its order denying Wal–Mart's post-trial motions.

We find the trial court's analysis of the *Gamble* factors is sufficient to sustain the punitive damages award. The trial court made the required *Gamble* analysis after the award of punitive damages. Regarding the defendant's degree of culpability, it found Wal–Mart created and disseminated the evidence used to arrest Mr. Solanki. Therefore, Wal–Mart was in the best position to point out the hand-keying of the credit card information to the Sheriff's Office. As to the

duration of the conduct, the trial court determined the transaction itself lasted a few minutes. However, Wal–Mart had the opportunity to explain the odd nature of the transaction throughout the criminal process. Concerning the defendant's awareness or concealment, the trial court found Wal–Mart created the documents and had exclusive knowledge and possession of them when it turned the information over to the Sheriff's Office. Furthermore, Wal–Mart was in the best position to ensure the transaction was handled properly. The trial court stated a punitive damages award may encourage greater oversight in Wal–Mart's and similarly situated vendor's credit card processing procedures. Regarding whether the award is reasonably related to the harm likely to result from such conduct, the trial court found the award was reasonably related to the harm suffered by Mr. Solanki and others who may be improperly accused of a crime due its negligence. It further found Wal–Mart was able to pay the punitive damages award. The court considered the fact that the jury was able to view the transaction on video and then render its verdict as a significant "other factor." We find the evidence supports the trial court's ruling.

**CONCLUSION**

Based on the foregoing, the trial court's decision is

**AFFIRMED.**

LOCKEMY, J., concurs.

WILLIAMS, J.

I respectfully dissent and believe the trial court improperly sent the issue of punitive damages to the jury.

The Solankis failed to submit *any* evidence at trial that Wal–Mart's actions in processing Mr. Solanki's credit card or in complying with law enforcement's request were "willful, wanton, or in reckless disregard of [Mr. Solanki's] rights." *See Longshore v. Saber Sec. Servs., Inc.,* 365 S.C. 554, 564, 619 S.E.2d 5, 11 (Ct.App.2005) (finding "the plaintiff must prove the defendant's misconduct was willful, wanton, or in reckless disregard of his rights" to support an award of punitive damages). Although I believe the error in hand-keying Mr. Solanki's credit card information would give rise to a negli-

gence claim against Wal–Mart, no evidence was introduced at trial to show Wal–Mart's conduct was so gross or reckless of consequences that punitive damages were warranted. *See Rogers v. Florence Printing Co.*, 233 S.C. 567, 577, 106 S.E.2d 258, 263 (1958) ("The test by which a tort is to be characterized as reckless, wil[l]ful or wanton is whether it has been committed in such a manner or under such circumstances that a person of ordinary reason or prudence would then have been conscious of it as an invasion of the plaintiff's rights."); *Hicks v. McCandlish*, 221 S.C. 410, 415, 70 S.E.2d 629, 631 (1952) ("Gross negligence is a relative term, and means the absence of care that is necessary under the circumstances, but the absence of this care alone, whether called 'gross' or 'ordinary' negligence, does not authorize the jury to give exemplary damages."); *Bell v. Atl. Coast Line R. Co.*, 202 S.C. 160, 171, 24 S.E.2d 177, 182 (1943) ("While punitive damages are recoverable for negligence so gross or reckless of consequences as to imply or to assume the nature of wantonness, willfulness or recklessness, yet they are not awarded in this state for mere gross negligence.").

Specifically, testimony from trial negates the Solankis' claim that Wal–Mart acted in a reckless manner. Ryan Smalls, the Wal–Mart employee who handled Mr. Solanki's transaction, testified at trial to Wal–Mart's internal procedures for handling credit card transactions. Smalls testified that Wal–Mart's policy, when a credit card would not swipe at a self-checkout station, was to first try to finalize the transaction at the self check-out station. If this did not work, an employee would suspend the transaction and attempt to process the transaction at the employee's work station. If the credit card still would not work, the employee would hand key the credit card number into the system twice to ensure accuracy, enter the expiration date, and then ask a customer service manager to manually perform an override. After the override was performed, the employee would then enter the three-digit security code on the back of the credit card before finalizing the transaction. According to Smalls, even a manager could not override the transaction if each of these steps were not properly taken. Although Smalls did not independently recollect this transaction with Mr. Solanki, after viewing the video surveillance, he affirmed that each of the foregoing steps was

taken during this transaction. Further, although it is regrettable that Mr. Solanki spent six nights in jail as a result of this incident, the Solankis presented no evidence that Wal–Mart's actions of complying with law enforcement's request were unreasonable or that Wal–Mart intentionally and recklessly processed Mr. Solanki's credit card transaction. *See Mishoe v. QHG of Lake City, Inc.,* 366 S.C. 195, 201, 621 S.E.2d 363, 366 ("In order to receive an award of punitive damages, the plaintiff has the burden of proving by clear and convincing evidence the defendant's misconduct was willful, wanton, or with reckless disregard for the plaintiff's rights. A conscious failure to exercise due care constitutes willfulness." (internal citations omitted)).

Moreover, I believe the trial court erred when it failed to adequately assess the culpability of Wal–Mart's conduct *before* charging the jury on punitive damages. *See S.C. Farm Bureau Mut. Ins. Co. v. Love Chevrolet, Inc.,* 324 S.C. 149, 154, 478 S.E.2d 57, 59 (1996) (*"First,* the [trial] court must determine whether the defendant's conduct rises to the level of culpability warranting a punitive damages award. If not, the issue of punitive damages may not be submitted to the jury." (emphasis added)); *Longshore,* 365 S.C. at 564, 619 S.E.2d at 11 ("[T]rial judges in this state have long been required, *as a threshold matter,* to assess the culpability of a defendant's conduct to determine whether punitive damages are available in a given case (i.e., whether the issue should be submitted to the jury)." (emphasis added) (quoting *South Carolina Farm Bureau Mut. Ins. Co. v. Love Chevrolet, Inc.,* 324 S.C. 149, 152, 478 S.E.2d 57, 58 (1996))). Rather, the extent of the trial court's observation on the issues of gross negligence and punitive damages was as follows:

> As a general rule, the issues of gross negligence are properly for the jury to determine. There's evidence, based upon the weirdness of the transaction, for lack of a better word, ... from which the jury could conclude that, in some way, ... the defendant Wal–Mart, was grossly negligent in the way they handled the transaction.... I'll charge gross negligence and punitives.

I believe the "weirdness of the transaction," standing alone, is insufficient as a matter of law to substantiate a gross negligence claim or to support an award of punitive damages.

244

Thus, I respectfully disagree with the majority and would hold the trial court erred in submitting the issue of punitive damages to the jury.