619 S.E.2d 5

Christopher LONGSHORE, Appellant/Respondent,

v.

SABER SECURITY SERVICES, INC., and Named Individual Marc A. Shafer, Defendants,

Of Whom SABER SECURITY SERVICES, INC., is, Respondent/Appellant,

and

Named Individual Marc A. Shafer is, Respondent.

No. 4019.

Court of Appeals of South Carolina.

Heard Feb. 8, 2005.

Decided July 25, 2005.

Rehearing Denied Sept. 20, 2005.

556

Karl Bryant Allen, of Greenville, and Max Thomas Hyde, Jr., of Spartanburg, for Appellant–Respondent.

R. Hawthorne Barrett, of Columbia, for Respondent–Appellant.

STILWELL, J.:

This case arises from a shooting incident at the Laurens National Guard Armory. While breaking up a fight, Marc A. Shafer, a security guard for Saber Security Services, Inc., shot Christopher Longshore causing serious injuries. Longshore brought actions for negligent use of deadly force, negligent hiring, training, and supervision, and assault and battery. The jury returned an inconsistent or incomplete verdict on the negligent use of deadly force claim, a verdict for Saber and Shafer on the assault and battery action, and a substantial verdict for both actual and punitive damages against Saber on the negligent hiring, training, and supervision cause of action. Saber and Longshore appeal. We affirm in part and reverse in part.

## FACTS

### The Incident

In December 1996, Longshore attended a party at the National Guard Armory in Laurens County. Saber provided two security guards for this event, one of whom was Shafer. As the party was winding down, Shafer and the other security guard were directing traffic when a fight broke out. A crowd gathered around the scene, and someone pulled out a pistol and fired three shots into the air. After briefly taking cover, the security guards began working their way through the crowd checking on the safety of those leaving the party. The security guards stopped two people and searched for weapons, but found none. They then observed a vehicle containing three or four individuals, two of whom were fighting. They

saw an individual, later identified as Derrick Bluford, fire four shots into the crowd wounding two people.

Shafer testified he ran up to the car and ordered the shooter to drop his weapon and get on the ground. After initially balking, the shooter eventually complied. Shafer disarmed him and handed the weapon to the other security guard.

At about that time, Longshore, who is Bluford's brother, stopped his car about 50 feet away and began walking toward Shafer and Bluford.[1] Shafer testified he saw a passenger in Longshore's vehicle pointing a nickel-plated automatic weapon at him over the top of the car. Shafer advanced toward Longshore and ordered Longshore to put his hands in the air. Longshore and several eyewitnesses testified that Longshore put both hands in the air, but Shafer testified that Longshore kept one hand behind his back. Shafer further testified that Longshore kept advancing toward him after he told Longshore to stop or he would shoot. Shafer then shot Longshore in the stomach.

Later that evening, police officers found a chrome-plated automatic weapon in Longshore's car. Another witness, Clifford Cook, testified the weapon was registered to him and that he had put the gun in the glove compartment of Longshore's car.

### Shafer's Hiring and Training

Saber hired Shafer approximately two weeks before the shooting incident occurred. Shafer applied, was recommended by another employee, and was hired the following day. Saber did not check Shafer's employment references, age, or high school diploma, as required by company policy.

Because Shafer was already licensed through the State Law Enforcement Division (SLED) as an armed security guard, Saber did not train Shafer for the position. Saber took Shafer's fingerprints and discussed the company's weapons policy with him. Shafer, however, failed to complete the weapons policy form in violation of company policy.

---

1. Longshore's testimony on this point conflicted with Shafer's, who testified he ordered Longshore out of the car.

Shafer was also required to have SLED transfer his license from his former employer to Saber. It is undisputed that Shafer had not yet received his transferred license on the date the shooting occurred. Pursuant to state law at that time, security guards could work but could not carry a weapon until receipt of a license.

## The Verdicts

The first cause of action, negligence, was submitted to the jury on the direct negligence of Shafer and vicarious negligence of Saber, on the theory that Shafer was Saber's agent. The jury found both defendants negligent and that their negligence proximately caused Longshore's injuries. The jury additionally found, however, that Longshore was also negligent and that his negligence proximately caused his injuries. Fault was allocated 50% to the defendants and 50% to Longshore. The jury then awarded zero damages.

In the second cause of action, negligent hiring, training, and supervision, the caption of both the complaint and the verdict form referred only to Saber, omitting any reference to Shafer. However, the allegations of the complaint realleged and incorporated all of the preceding allegations relating to negligence on the part of both Shafer and Saber. Also, the first question on the verdict form required the jury to find if "the defendants were negligent and [whether] such negligence proximately caused the plaintiff's injuries." That question was answered in the affirmative, but the jury found no comparative negligence on the part of Longshore as to this cause of action. The jury awarded Longshore $800,000 in actual damages and $200,000 in punitive damages on this cause of action.

The third cause of action, assault and battery, was submitted to the jury against both Saber and Shafer, and resulted in a defense verdict.

## Post Verdict Events

Saber moved for JNOV on the second cause of action, negligent hiring, training, and supervision, based on lack of proximate cause. In the alternative, Saber argued the verdict in the negligent hiring, training, and supervision action should be reduced because the jury concluded Longshore was 50% negligent in the negligence cause of action. Saber further

moved for a new trial absolute or for a new trial nisi remittitur. Finally, Saber requested that the court dismiss the punitive damages award, or, in the alternative, review the punitive damages for excessiveness under *Gamble v. Stevenson*, 305 S.C. 104, 406 S.E.2d 350 (1991). Longshore moved for JNOV and for a new trial absolute and/or additur as to the negligence cause of action.

After a hearing, the trial court denied all motions except Saber's motion to amend the judgment. Finding that Longshore's 50% negligence applied to all negligence causes of action, the trial court reduced the actual damages to $400,000.

## STANDARD OF REVIEW

■■■ An action in tort for damages is an action at law. *Culler v. Blue Ridge Elec. Coop., Inc.*, 309 S.C. 243, 246, 422 S.E.2d 91, 93 (1992). In an action at law, on appeal of a case tried by a jury, the jurisdiction of this court extends merely to the correction of errors of law, and a factual finding of the jury will not be disturbed unless a review of the record discloses that there is no evidence which reasonably supports the jurys findings. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 85, 221 S.E.2d 773, 775 (1976). However, appellate courts are free to decide novel questions of law with no particular deference to the trial court. *See* S.C. Const. art. V, § 5; S.C.Code Ann. § 14–3–320, 14–3–330, & 14–8–200 (1976 & Supp.2004); *see also IOn, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 411, 526 S.E.2d 716, 718–19 (2000).

## LAW/ANALYSIS

Saber and Longshore appeal.[2] Saber argues the trial court erred in denying its motion for judgment notwithstanding the verdict (JNOV) in both causes of action for negligence. Saber also argues the trial court erred in failing to reduce or set aside the award of punitive damages. Longshore argues the trial court erred in reducing the actual damages awarded in the negligent hiring, training, and supervision action by his comparative negligence found by the jury in the negligence action.

---

2. Respondent Shafer did not file a brief.

## I. Denial of Saber's JNOV Motion

■ Saber argues the trial court should have granted its JNOV motion because the jury found Longshore negligent in the first cause of action and returned a defense verdict on the assault and battery claim. Saber argues the combination of these two findings precludes a finding that Saber proximately caused Longshore's injuries. Underlying Saber's argument is its contention that the jury determined Shafer's act of shooting Longshore was justified and such a determination, of necessity, absolves Saber of any liability based on the theory of negligent hiring, training, or supervision. We find no error by the trial court in denying Saber's JNOV motion.

When reviewing the denial of a motion for directed verdict or JNOV, the evidence and the reasonable inferences that can be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Daves v. Cleary,* 355 S.C. 216, 229, 584 S.E.2d 423, 429 (Ct.App.2003). The appellate court will reverse the trial court only where there is no evidence to support the ruling. *Elam v. South Carolina Dep't of Transp.,* 361 S.C. 9, 28, 602 S.E.2d 772, 782 (2004).

Neither current statutory law nor jurisprudence in this state has specifically required a plaintiff, in an action against an employer for negligent hiring, training, and supervision, to prove the employee committed an actionable tort. However, there is authority to support the proposition. *See Sabb v. South Carolina State Univ.,* 350 S.C. 416, 431–33, 567 S.E.2d 231, 238–39 (2002) (Pleicones, J., dissenting). In this case, we are not required to address the issue because, as previously noted, the action for negligent hiring, training, and supervision against Saber also included allegations of negligence by Shafer, and the verdict form required the jury to determine whether the "defendants" were negligent.

■ Furthermore, the jury's verdict for the defendants on the claim for assault and battery can be harmonized with the verdicts in the negligence and negligent hiring, training, and supervision actions. Assault and battery is generally classified as an intentional tort, as contrasted with a tort based on negligence. *See generally State Farm Fire & Cas. Co. v. Barrett,* 340 S.C. 1, 10, 530 S.E.2d 132, 137 (Ct.App.2000); F. Patrick Hubbard & Robert L. Felix, *The South Carolina Law*

*of Torts* 389–97 (2d ed.1997). We find no inconsistency in these verdicts. The jury's findings, as a whole, indicate the jury concluded the shooting was the result of negligence.

■ For instance, although the jury found Longshore 50% at fault in the negligence cause of action, the jury could reasonably have concluded that, as to negligent hiring, training, or supervision, Saber's negligence was the sole proximate cause of Longshore's injuries. Longshore had nothing to do with Shafer's hiring, training, or supervision. These responsibilities were within the exclusive domain of Saber. "It is enough if the negligent act complained of is at least one of the causes without which the injury would not have occurred." *Shepard v. South Carolina Dep't of Corrs.*, 299 S.C. 370, 375, 385 S.E.2d 35, 37 (Ct.App.1989). On this cause of action, the jury absolved Longshore of any comparative negligence.

We cannot agree with Saber's argument that the only inference to be drawn from the jury verdicts taken as a whole is that Saber's actions could not have been the proximate cause of Longshore's injuries. Accordingly, we hold the trial court did not err in denying Saber's motion for JNOV.

## II. Reduction of Damages—Longshore's Comparative Negligence

■ Longshore argues the trial court erred in applying the jury's finding of his own 50% comparative negligence, found by the jury in the negligence action, to the damages awarded in the negligent hiring, training, and supervision action. Longshore also argues the consequent 50% reduction of actual damages in the negligent hiring, training, and supervision action constitutes error. We agree.

■ The trial court cited no authority or precedent for its determination that a jury's finding of comparative negligence in one cause of action should apply to another cause of action, and we have found no South Carolina cases directly on point. Complicating the analysis is the admittedly inconsistent or incomplete verdict in the first cause of action. When the jury assesses liability to a defendant but awards zero damages, the verdict is facially inconsistent and contrary to South Carolina law. *Stevens v. Allen*, 342 S.C. 47, 53, 536 S.E.2d 663, 666 (2000). "[T]he proper and most consistent

approach of treating such verdicts is to require, upon request, the trial court to re-submit the matter to the jury. If the jury cannot reach a consistent verdict, the trial court may then order a new trial nisi or a new trial absolute." *Id.* However, the law imposes no duty upon the trial judge to reject an inconsistent verdict in the absence of an objection by either party. *Id.* at 50, 536 S.E.2d at 664.

 Neither party moved the trial court to resubmit the matter to the jury, and the trial court had no authority or duty to do so in the absence of such a motion. Neither the parties to the litigation nor the court should be required to guess what the jury sought to accomplish. *Daves,* 355 S.C. at 231, 584 S.E.2d at 430. However, it is the duty of the court to sustain verdicts when a logical reason for reconciling them can be found. *Id.* (holding where two verdicts are inconsistent, the court may not speculate as to which verdict was valid and which was not).

We find at least one logical way to reconcile the verdicts. As previously discussed, although the jury found Longshore 50% at fault in the negligence cause of action, the jury could reasonably have concluded that, as between Longshore and Shafer during the shooting incident, both parties were at fault. The jury could also have concluded that as between Longshore and Saber, regarding negligent hiring, training, or supervision, Saber's negligence was the sole proximate cause of Longshore's injuries. Thus, we hold the trial court erred in reducing the amount of actual damages returned in the negligent hiring, training, and supervision verdict. The negligence of both Saber and Shafer was submitted to the jury in both causes of action, and both were determined to have been liable to Longshore in each cause of action. However, the two causes of action are separate and distinct requiring different kinds and quantities of proof. Longshore was not found to be comparatively negligent in the cause of action in which the jury returned a verdict. Because the verdict on the first cause of action, negligence, is essentially a nullity, we perceive no difficulty in ascertaining at least one rationale for the jury's verdicts and affirming its award of actual damages in the negligent hiring, training, and supervision cause of action. We therefore find the trial court erred in reducing the verdict by 50%.

## III. Punitive Damages

 Saber lastly argues the punitive damages award should be reversed. We agree.

 Punitive damages are quasi-criminal in nature and are imposed to punish a wrongdoer and to deter like conduct. *Atkinson v. Orkin Exterminating Co.*, 361 S.C. 156, 164, 604 S.E.2d 385, 389 (2004). Although appellate review of an award of punitive damages is limited to the correction of errors of law, an award of punitive damages must be proven under a significant burden of proof: clear and convincing evidence. *Austin v. Specialty Transp. Servs., Inc.*, 358 S.C. 298, 310, 594 S.E.2d 867, 873 (Ct.App.2004); *Hundley v. Rite Aid of South Carolina, Inc.*, 339 S.C. 285, 311, 529 S.E.2d 45, 59 (Ct.App. 2000).

 Furthermore, the plaintiff must prove the defendant's misconduct was willful, wanton, or in reckless disregard of his rights. *Id.* "[T]rial judges in this state have long been required, as a threshold matter, to assess the culpability of a defendant's conduct to determine whether punitive damages are available in a given case (i.e., whether the issue should be submitted to the jury)." *South Carolina Farm Bureau Mut. Ins. Co. v. Love Chevrolet, Inc.*, 324 S.C. 149, 152, 478 S.E.2d 57, 58 (1996).[3]

Upon review, we find no clear and convincing evidence that Saber's conduct in negligently hiring, training, or supervising Shafer was willful, wanton, or in reckless disregard of the rights of others. The evidence at most establishes that Saber was negligent. Saber did fail to comply with some of its internal policies. However, it hired Shafer based on a favorable reference. Because Shafer was already licensed, Saber was not required to re-train him, but Saber did ensure that Shafer read its weapons policy. Saber committed an administrative violation by allowing Shafer to work as an armed

---

**3.** Once the trial judge determines a punitive damage award is warranted under the facts of a case, the amount to be assessed has historically been measured by the jury against the character of the wrong committed, the punishment to be applied, and the ability of the defendant to pay. *Id.* at 152, 478 S.E.2d at 58. *See also Gamble v. Stevenson*, 305 S.C. 104, 111–12, 406 S.E.2d 350, 354 (1991) (enumerating factors to consider when reviewing amount of punitive damages awarded).

security guard before his license transfer had been processed by SLED. However, this had no bearing on Shafer's training in the use of a firearm. There is no evidence that the purpose of the license transfer regulation was to prevent incidents such as the one in this case. The trial court specifically found that there was no evidence that either party knew it was impermissible for Shafer to work as an armed guard before his license transfer was accomplished. Furthermore, there is no evidence that Saber's negligence was anything other than a one time occurrence.

We therefore find that the trial court erred in submitting the issue of punitive damages to the jury. Longshore has failed as a matter of law to demonstrate, by clear and convincing evidence, that Sabers negligence in hiring, training, and supervising Shafer was willful, wanton, or in reckless disregard of his rights.

## CONCLUSION

We affirm the trial court's denial of Saber's motion for JNOV due to the inconsistency of the verdicts. We reverse the trial court's decision to reduce the award of actual damages. We likewise reverse the award of punitive damages.

**AFFIRMED IN PART AND REVERSED IN PART.**

GOOLSBY and HUFF, JJ., concur.