674 S.E.2d 176

In re ESTATE OF Jettie Byrd F. ANDERSON

Sarah Anderson Lee, Appellant,

v.

Burney V. Locklear, III, Individually and as Personal Representative of the Estate of Jettie Byrd F. Anderson, Edward Eugene Locklear, Otis D. Anderson, Regina A. Mistic, Gale A. Campbell, and Vickey A. Landing, Respondents.

No. 4506.

Court of Appeals of South Carolina.

Heard Dec. 12, 2008.
Decided Feb. 24, 2009.

Charles J. Hupfer, Jr., of Florence, for Appellant.

Larry G. Reddick, of Lake City, for Respondents.

SHORT, J.

Sara Anderson Lee appeals the probate court's finding that the last will and testament of Jettie Byrd Anderson was valid and not the result of undue influence. We affirm.

## FACTS

Anderson passed away on January 29, 2002, at the age of ninety-eight. Anderson's will named her grandsons, Burney Locklear, III, and Edward Eugene Locklear (collectively, the Locklears), as the sole beneficiaries, to the exclusion of Anderson's daughter, Sara Anderson Lee.[1] Lee is Anderson's last living child.

Anderson's last living son, John, predeceased her on October 2, 2001. John lived with Anderson until his death and was unmarried. Prior to and after John's death, the Locklears resided at Anderson's home and assisted her with daily living, including buying her groceries and paying her bills. Anderson did not want to go to a nursing home and the Locklears promised her they would take care of her so she could stay in her home.

In October 2001, at Anderson's request, the Locklears and their cousin took Anderson to a local attorney, James Epps, to prepare a power of attorney.[2] Burney made the appointment

---

1. Betty Locklear was the Locklears' mother. She was one of Anderson's daughters and predeceased Anderson.

2. Epps testified Lee's husband, Aaron, had previously come to his office seeking a power of attorney for Anderson because she was mentally

and was present during the meeting between Anderson and Epps. At some point after the power of attorney naming the Locklears was executed, a typographical error was discovered and Epps prepared a corrected one.

Also, in October 2001, an adult abuse investigation was conducted as a result of an anonymous phone call. Diane Benjamin, a Department of Social Services (DSS) employee, testified she went unannounced to Anderson's home on October 19, 2001, to investigate an anonymous complaint of elderly abuse. Benjamin determined Anderson was well cared for by the Locklears and was mentally sharp, noting in her report that Anderson was "very alert to be a 98–year–old woman." Anderson told Benjamin she wanted her grandson, Burney, to be in charge of her affairs because she trusted him and she planned to meet with her attorney to get a power of attorney for Burney. She also said her son-in-law was trying to force Burney to sign papers and take her out of her house. Benjamin spoke with Anderson privately while the Locklears were not in the room. Benjamin made a return visit on November 14, 2001, and Anderson remembered her from the first visit. Anderson told Benjamin she had resolved the family feud by giving a power of attorney to Burney.

In December 2001, Anderson decided to review her will with Epps.[3] Anderson again directed Burney to make an appointment for her. Epps informed her that pursuant to her current will, executed in 1992, all of her property was left to her son, John Anderson, and if he predeceased her, the property went to her daughter, Betty Locklear. Because both John and Betty had predeceased Anderson, Epps told Anderson all her property would pass to Betty's children, the Locklears. Anderson explained to Epps that her other daughter, Lee, was not in the will because she did not want Lee's "husband to get his hands on any of her property." Anderson

incompetent; however, Epps told him Anderson could not give anyone a power of attorney if she was mentally incompetent, and Lee responded she was competent enough to give a power of attorney. Aaron testified he did not remember going to Epps' office.

**3.** Burney testified Aaron came over to Anderson's house after John's death and was upset about Anderson's deceased husband's will. After Aaron's visit, Burney said Anderson told him she wanted to see Epps and instructed him to make the appointment.

executed a second will on December 20, 2001, naming the Locklears as the personal representatives and beneficiaries because John and Betty had predeceased her. Epps did not consider the second will to be a substantive change because Anderson was simply changing the names of her personal representatives as a result of the death of the personal representatives named in her first will. Two witnesses were present at the signing of the will and Epps testified the Locklears did not have any part in the discussion about the new will.

Aaron testified Anderson told him in December 2001 that the Locklears were trying to get her to change her will and she wanted to keep her first will. Aaron testified he believed Anderson had been incompetent for twelve to fifteen years and had been gradually getting worse. In support of Lee's claims, Anderson's treating physicians, Doctors Frank Lee and Joel Dekle, testified at trial as experts. Dr. Lee and Dr. Dekle both testified Anderson was mentally incompetent. Prior to trial, Aaron had contacted both doctors to write letters about Anderson's mental state and gave them to Lee's attorney. Dr. Lee testified, in his opinion, Anderson started to suffer from senility in 1995; however, his medical records for Anderson contained only two notations that she was senile in the twenty-five to thirty years he treated her and he never provided her with any medication for senility. Dr. Dekle saw Anderson four times and believed she had some senile dementia, but his medical records did not have any notations about her senility. Also, Dr. Dekle's letter stated Anderson's condition went downhill after her son's death; however, he testified this information was not from his personal knowledge, but was told to him from someone else, possibly the Lees. Gail Campbell, Anderson's granddaughter, also testified she did not think Anderson was capable of understanding the will when she signed it; however, at her deposition, she stated she probably only saw Anderson once after John passed away.

In contrast, Alma Matthews, Anderson's sister-in-law, testified she visited with Anderson once a week until she passed away and Anderson was mentally alert. Other family members, friends, and neighbors also testified Anderson was mentally competent until she passed away. Additionally, Anderson's life-long friend, Mary Benton, testified Anderson

told her she did not want Aaron to have any of her property and she wanted the Locklears to get it.

On February 7, 2002, Burney instituted an informal probate of Anderson's will and was appointed as the personal representative. On March 4, 2002, Lee filed a petition alleging Anderson's will was invalid because Anderson lacked the requisite capacity to make a will and the will was the result of undue influence. Lee also filed a petition to be appointed as Anderson's personal representative. On March 16 and 17, 2006, the matter was tried without a jury. The probate court issued its order on April 27, 2006, finding there was no undue influence and the will was valid. Lee filed a motion for reconsideration with the probate court, which was denied, and Lee appealed to the Court of Common Pleas. After a hearing, the court issued its order affirming the probate court. This appeal followed.

## STANDARD OF REVIEW

An action to set aside a will is an action at law. *In re Estate of Cumbee*, 333 S.C. 664, 670, 511 S.E.2d 390, 393 (Ct.App.1999). "If the proceeding in the probate court is in the nature of an action at law, the circuit court and this Court may not disturb the probate judge's findings of fact unless a review of the record discloses there is no evidence to support them." Id. "In a law case tried without a jury, questions regarding the credibility and the weight of evidence are exclusively for the trial judge." *Golini v. Bolton*, 326 S.C. 333, 342, 482 S.E.2d 784, 789 (Ct.App.1997).

## LAW/ANALYSIS

Lee argues the probate court erred in finding Anderson's last will and testament was valid and not the result of undue influence. We disagree.

The maker's exercise of judgment and free choice must be prevented to void a will on the ground of undue influence. *Cumbee*, 333 S.C. at 671, 511 S.E.2d at 394. "A mere showing of opportunity or motive does not create an issue of fact regarding undue influence." *Id.* "[T]he issue of undue influence should be resolved in the light of the proposi-

tion that a sane testator has the right to dispose of his property as he chooses." *Harris v. Berry,* 231 S.C. 201, 205, 98 S.E.2d 251, 253 (1957) (citations omitted). "The mere influence of affection and attachment, or the mere desire of gratifying the wishes of another, will not vitiate a testamentary act unless that act was the result of coercion or importunity beyond the testator's power to resist." *Id.*

The party seeking to challenge a will on the basis of undue influence must present evidence which "unmistakenly and convincingly shows the party's will was overborne by the defendant or someone acting on his behalf." *Macaulay v. Wachovia Bank of S.C., N.A.,* 351 S.C. 287, 299, 569 S.E.2d 371, 378 (Ct.App.2002) (citations omitted). "However, the existence of a confidential relationship creates a presumption that the instrument is invalid, and the burden then shifts to the proponent of the instrument to affirmatively show the absence of undue influence." *Id.* at 300, 569 S.E.2d at 378. "A confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one imposing the confidence." *Cumbee,* 333 S.C. at 672, 511 S.E.2d at 394 (quoting *Brown v. Pearson,* 326 S.C. 409, 422, 483 S.E.2d 477, 484 (Ct.App.1997)). The presumption of invalidity in deed cases also applies to will cases. *Howard v. Nasser,* 364 S.C. 279, 287, 613 S.E.2d 64, 68 (Ct.App.2005); *see Dixon v. Dixon,* 362 S.C. 388, 398 n. 7, 608 S.E.2d 849, 854 n. 7 (2005) ("[T]he analysis is the same regardless of whether the underlying document sought to be set aside on the grounds that the plaintiff was unduly influenced is a will or a deed."); Restatement (Third) of Prop.: Wills and Other Donative Transfers § 8.3 cmt. f (2003) ("A presumption of undue influence arises if the alleged wrongdoer was in a confidential relationship with the donor ... whether the transfer was by gift, trust, will, will substitute, or a donative transfer of any other types.").

Lee asserts the Locklears had a fiduciary relationship with Anderson by way of the power of attorney and they placed undue influence on her to make a change to her will. Lee offers the following additional evidence in support of her claim of undue influence: (1) the Locklears made the appointments with Epps for Anderson; (2) the Locklears accompanied

Anderson to the appointments; (3) the Locklears were likely present during the discussion of the will; and (4) the Locklears resided with and cared for Anderson in her home.

While the Locklears had Anderson's power of attorney, which created a fiduciary relationship, no evidence was presented it was ever utilized. *See Cumbee,* 333 S.C. at 672–73, 511 S.E.2d at 394 (finding in a will contest that a fiduciary relationship existed between son and mother when son had mother's power of attorney and managed her finances, which created the presumption of undue influence). Burney testified he made the appointment with Epps at Anderson's request and took Anderson to Epps' office because she needed help getting there. Epps, a practicing attorney, testified he did not witness any undue influence and he believed the changes to the will were Anderson's ideas. Epps testified the Locklears did not have any part in the discussion about the new will.

Additionally, in the 2001 will, Anderson changed the named personal representatives to the Locklears because her son and daughter had predeceased her. Also, Epps did not think the 2001 will substantially changed anything because Anderson's 1992 will also did not name Lee as a beneficiary and the Locklears were the sole beneficiaries under that will as well. Epps testified Anderson told him she did not want Lee named as a beneficiary because she did not want Lee's "husband to get his hands on any of her property." Anderson's life-long friend, Benton, also testified Anderson told her she did not want Aaron to have any of her property and she wanted the Locklears to inherit it.

Furthermore, the Locklears did not force Anderson to stay in her home but were merely following her wishes not to be sent to a nursing home. Several witnesses testified Anderson was the one giving the orders and was not likely to be influenced by someone else. Benjamin, the DSS Investigator, testified Anderson told her she wanted Burney to be in charge of her affairs because she trusted him and her son-in-law was trying to take her out of her house against her wishes. Also, Benjamin testified DSS encourages people to stay in their homes if they have adequate care. Dr. Lee also testified he had not recommended Anderson be placed in a nursing home.

Thus, the Locklears presented sufficient evidence to rebut a presumption of undue influence. Additionally, substantial evidence in the record supports the probate court's finding the will was valid and not the result of undue influence.

## CONCLUSION

For the foregoing reasons, the order of the probate court is **AFFIRMED.**

HEARN, C.J., and KONDUROS, J., concur.