694 S.E.2d 51

**James O. HALE and Hale and Hale, P.A., Respondents/Appellants,**

**v.**

**Thomas FINN, d/b/a Finn Law Firm, Appellant/Respondent.**

**James O. Hale and Hale and Hale, P.A., Plaintiffs**

**v.**

**Thomas Finn, Defendant.**

**No. 4683.**

Court of Appeals of South Carolina.

Heard March 4, 2010.

Decided May 5, 2010.

Rehearing Denied June 24, 2010.

80

Curtis W. Dowling and J. Todd Kincannon, both of Columbia, for Appellant/Respondent.

John E. Parker, of Hampton, for Respondents/Appellants.

THOMAS, J.

These cross-appeals arise from a dispute between attorneys over the division of fees in a civil litigation matter. In the primary appeal, Appellant/Respondent Thomas Finn, d/b/a Finn Law Firm (Finn) alleges error in the special referee's award of actual and punitive damages to Respondents/Appellants James O. Hale and Hale and Hale, P.A. (Hale) on Hale's cause of action for tortious interference with contract. In his cross-appeal, Hale argues the special referee should have based actual damages on partnership law rather than on quantum meruit. Both Finn and Hale appeal the special

 

referee's decision. We affirm the actual damages award and reverse the punitive damages award.

## FACTS AND PROCEDURAL HISTORY

On October 15, 1997, Finn and Hale commenced an action on behalf of the Village West Horizontal Property Regime and the Village West Owners' Association (collectively Village West) arising out of a construction dispute. Hale, an attorney practicing in Beaufort County, had begun representing Village West in 1991 in routine legal matters. At Hale's recommendation, the Mullen Firm, where Finn was employed at the time, was associated in the case.

Because of concerns about the applicable statutes of limitations and repose, the complaint in the Village West lawsuit was filed before Village West finalized a fee agreement with its attorneys. Eventually, an agreement was reached on December 8, 1997, when Village West signed a contingency fee contract hiring Hale to represent it in the above-mentioned construction litigation. Under the agreement, counsel would receive a contingency fee of thirty-three and one third percent of any amount recovered unless an evidentiary hearing, arbitration, or mediation hearing was required. If any of these were necessary, the contingency fee would be forty percent of the recovery. Shortly after Village West signed the contract with Hale, Hale sent the Mullen Firm a copy of the contract with a letter stating his understanding that the contingency fee would be divided equally between the two law firms. Hale never received a reply to this communication.

Hale, Finn, and various other attorneys from the Mullen Firm, actively worked on the Village West lawsuit during the preliminary stages. A mediation in the lawsuit was scheduled for December 11, 2001. Contrary to instructions from his superior, Finn met with the Village West Board of Directors before the mediation instead of arranging for one of the senior partners of the Mullen Firm to meet with the Board. The mediation was unsuccessful, and a status conference had to be set in the matter.

During this time, the Mullen Firm had become dissatisfied with some of Finn's work on other matters, prompting the senior partner to ask another lawyer in the firm to become

involved with the Village West lawsuit. A meeting was scheduled for February 8, 2002, for that lawyer and Finn to review ten files that had been assigned to Finn. On the appointed day, however, Finn advised the other attorney before the meeting was to begin that he intended to leave the Mullen Firm.

By letter dated February 11, 2002, the President of the Village West Board of Directors, advised both the Mullen Firm and Hale of Village West's desire to "move with [Finn]" on the pending construction litigation. On February 22, 2002, attorney Gregory Alford, who had been retained to represent Village West in regime matters, sent Hale a letter requesting that Hale direct all further communications with either the Board or its individual members to Alford's office. Near the end of February 2002, Hale retained counsel to represent his interest in the matter.

By agreement dated March 11, 2002, the Association retained Finn "in association with [the Mullen Firm]" in the Village West construction litigation.[1] In a fax to the Mullen Firm dated April 1, 2002, Alford advised as follows:

The Board's directive is that this agreement is not effective or to be delivered to either Mullen Law Firm or Finn Law Firm until an agreement to indemnify against Hale is delivered. Finn and Seekings have indicated orally that this would be done and a writing would be forthcoming to that effect.[2]

Despite the Board's directive, neither Finn nor anyone else at the Mullen Firm ever gave written confirmation of an indemnification agreement. Hale apparently continued to believe he was still counsel of record in the Village West lawsuit, as evidenced by his appearance at a status conference in the matter on February 14, 2002, and possibly a summary judgment hearing in May 2002. In July 2002, Alford advised Hale that during its March 2002 meeting, the Village West Board of Directors ratified the termination of Hale's services in the

---

**1.** Because of personnel changes, the name of the Mullen Firm changed; however, the change does not impact the merits of this appeal.

**2.** Seekings was an attorney with the Mullen Firm.

construction litigation. Thereafter, Hale moved to withdraw and assert a lien in the matter.

The Village West lawsuit was settled for $7,002,500 in October 2002, and a settlement disbursement accounting was rendered on November 4, 2002. An attorney's fee of approximately $2,801,000 was disbursed to the Mullen Firm. Finn received 25 percent of this amount. Although Hale's motion to be relieved as counsel and motion for a lien were still pending, a form order was issued dismissing the case.

On September 29, 2003, a hearing took place in the Village West lawsuit on Hale's motion to establish a lien for his fees on the proceeds of the settlement. On November 3, 2003, the court issued an order in which it acknowledged Hale had previously been granted leave to amend his motion to assert a retaining lien and any other equitable liens to which he may have been entitled. The court also granted a motion by Hale to join Finn and the Mullen Firm as parties to this action.

On January 6, 2005, Hale filed a separate action against the Mullen Firm and Finn for breach of contract, intentional interference with contractual relations, and breach of fiduciary duties. In his complaint, Hale sought actual and punitive damages.

Hale was formally relieved as counsel in the Village West lawsuit on August 25, 2005. Later, after all parties remaining in the Village West litigation and those in Hale's action waived their right to a jury trial, the two lawsuits were consolidated and referred to the special referee.

The special referee took testimony in the matter on August 16 and 17, 2006. On the second day of the hearing, Hale settled with the Mullen Firm for $400,000 on the breach of fiduciary duty claim, leaving Finn as the only defendant. Just before the testimony was to resume, counsel stipulated the only cause of action against Finn was the claim for tortious interference with the contractual relations between Hale and Village West.

Hale acknowledged on direct examination there was no written joint representation agreement to which Finn himself was a party. In support of his claim, Hale testified about his correspondence to the Mullen Firm regarding the fee division between the two law firms. He also presented evidence that he

had devoted between six hundred and eight hundred hours to the lawsuit and the directive of the Village West Board of Directors that Finn and the Mullen Firm were to "indemnify against Hale." In addition, it appears undisputed that Finn was aware of Hale's lien.

Sometime during October 2006, the special referee issued to counsel an unsigned draft order. In the draft order, the special referee noted Hale, after settling with all defendants except for Finn, "continued to pursue a single cause of action against Mr. Finn for tortious interference with contractual rights," those contractual rights originating from Hale's representation contract with Village West. With regard to the allegation by Hale that Finn had interfered with the representation agreement between Hale and Village West, the referee's proposed findings were that Hale failed to carry his burden of proof that Finn engaged in tortious interference with this agreement and that the Village West Board "was primarily prompted by the fact that Mr. Finn had earned their respect through his efforts and dedication."

Nevertheless, the special referee proposed to find that "Mr. Finn willfully and recklessly agreed to distribution of the entire fee in total disregard of Mr. Hale's right, and furthermore violated the proper practice of bringing the matter to the Court's attention." Based on this finding, the special referee proposed to order Finn to pay Hale $525,000 in actual damages and $50,000 in punitive damages, with the proviso that the award would be reduced by any amounts paid by those defendants with whom Hale had settled. The amount of actual damages was based on the special referee's determination that Hale was entitled to between 15 and 20 percent of the entire fee based on a quantum meruit theory of recovery. The special referee also rejected Finn's defense that the Mullen Firm was in charge of actual disbursements, noting that Finn, though aware that Hale had never been removed as counsel of record in the case, agreed to the distribution of the entire fee to the Mullen Firm and himself. Citing *Barnes v. Alexander*, 232 U.S. 117, 34 S.Ct. 276, 58 L.Ed. 530 (1914), and *McNair v. Rainsford*, 330 S.C. 332, 499 S.E.2d 488 (Ct.App. 1998), the special referee further stated "[t]he attorneys' fees should have been held as a constructive trust, and Mr. Finn's complicity and acquiescence of 100% without justification con-

stituted an interference with [Hale's] right to a portion of the funds."

Because of objections from Finn to the proposed order, the special referee reopened the record and held another hearing on February 16, 2007. Before the testimony began, counsel for Hale moved to amend the pleadings to conform to the proof offered on the issue of interference with contractual relations at the time the attorney's fees were disbursed and also to include a constructive trust. It is clear from the record that the motion resulted from the special referee's invitation, in which he indicated "that if the original pleading was not adequate to cover interference at the time of disbursement and if the plaintiff wishes to amend to make that a specific allegation then I'll grant that motion and proceed on that basis." Hale declined to submit additional evidence, and the hearing proceeded with Finn as the only witness.

On February 21, 2007, the special referee issued a final order in the matter. As in the draft order previously sent to counsel, the special referee in the final order found Hale failed to carry his burden of proof that Finn tortiously interfered with the representation agreement between Hale and Village West. Nevertheless, although the special referee noted, as he did in the draft order, that Hale's sole cause of action against Finn was for tortious interference with contractual rights, he also retained the findings from his draft order that the contingent fee obtained in the underlying litigation should have been held in trust and that Finn acted improperly in agreeing to the division of the attorney's fee between himself and the Mullen Law Firm without alerting the court to Hale's claim. As he did in the draft order, the special referee ordered Finn to pay actual damages of $525,000.00, less the amount to be paid by the Mullen Firm pursuant to its settlement with Hale; however, punitive damages in the final order were decreased to $15,000. Both Hale and Finn appealed the special referee's final order.

## STANDARD OF REVIEW

"Courts have wide latitude in amending pleadings and, while this power should not be exercised indiscriminately or to surprise or prejudice an opposing party, the matter of allow-

ing amendments is left to the sound discretion of the trial judge." *Mylin v. Allen–White Pontiac*, 281 S.C. 174, 180, 314 S.E.2d 354, 357 (Ct.App.1984).

A trial court's determination of the constitutionality of a punitive damages award is subject to a de novo standard of review. *Mitchell v. Fortis Ins. Co.*, 385 S.C. 570, 583, 686 S.E.2d 176, 182 (2009).

## LAW/ANALYSIS

I. Finn's appeal

A. Actual damages award

On appeal, Finn advances several arguments supporting his position that the special referee's award of actual damages was improper. First, relying on the premise that the only issue before the special referee was Finn's alleged interference with the contractual relations between Hale and Village West, Finn argues an award for a claim for intentional interference with contractual relations cannot be fashioned on quantum meruit entitlement. In conjunction with this argument, he contends that the award was inconsistent with the special referee's findings that he did not interfere with the representation contract between Hale and Village West and that he believed the Mullen Firm would assume responsibility for Hale's fees. Second, he alleges the special referee erred in "bootstrapping" to the claim for intentional interference with contractual relations the elements of several unpled causes of action, namely conversion and constructive trust, to support his decision.

We agree with Finn that because the special referee determined he did not interfere with the representation contract between Hale and Village West, damages for that cause of action were unwarranted. We disagree, however, with his argument that the special referee lacked authority to base the award of actual damages on quantum meruit. Such an award was proper to enforce a constructive trust.

As we have noted in our narrative of the facts, after the settlement agreement between Hale and the Mullen Firm was read into the record, counsel stipulated the only cause of action against Finn was interference with contractual rela-

tions. Nevertheless, at the commencement of the second hearing in the matter, Hale moved to amend his pleadings to "include a constructive trust," a basis for relief that was cited by the special referee in his proposed order and not objected to by Finn when that order was received by counsel. Furthermore, contrary to the contention in Finn's reply brief that the special referee "certainly did not state in the record any reasons for allowing an amendment of the pleadings to conform to the evidence," the special referee indicated he was willing to grant a motion by Hale to amend his complaint to include "a specific allegation" "to cover interference at the time of disbursement." It is apparent from the other statements the special referee made during the colloquy that he believed such an amendment would conform to the evidence of Finn's "interference at the time of disbursement." [3] Such interference can, as the special referee indicated in both his proposed and final orders, give rise to the imposition of a constructive trust.

"A constructive trust arises entirely by operation of law without reference to any actual or supposed intentions of creating a trust." *SSI Med. Servs. v. Cox*, 301 S.C. 493, 500, 392 S.E.2d 789, 793 (1990). It "arises whenever a party has obtained money which does not equitably belong to him and which he cannot in good conscience retain or withhold from another who is beneficially entitled to it." *Id.* at 500, 392 S.E.2d at 793–94. Authority exists to support the proposition that "a claim for imposition of a constructive trust is not an independent cause of action." *Morrison v. Morrison*, 284 Ga. 112, 663 S.E.2d 714, 717 (2008); *see also Faulkner v. Faulkner*, 257 S.C. 172, 175–76, 184 S.E.2d 718, 720 (1971) (referring to the doctrine of constructive trust as "a creature of equity jurisprudence, raised without regard to intention to prevent unjust enrichment"). "A constructive trust does not ... arise because of a manifestation of an intention to create it, but it is imposed as a *remedy* to prevent unjust enrichment." *Restatement (First) of Restitution* § 160 cmt. a (1937) (emphasis

---

3. Moreover, although as Finn argues in his reply brief, the South Carolina Rules of Civil Procedure require the trial judge to "state in the record the reason or reasons for allowing the amendment or evidence," the lack of a formal amendment "does not affect the result of the trial of these issues." Rule 15(b), SCRCP.

added). "A constructive trust is a flexible equitable remedy whose enforcement is subject to the equitable discretion of the trial court." *Wendell Corp. Trustee v. Thurston,* 239 Conn. 109, 680 A.2d 1314, 1320 (1996).

We hold the issue of Hale's right to a constructive trust in his favor was tried with the implied consent of the parties. During the hearing, Hale testified without objection that after he realized he was no longer counsel of record for Village West, he filed a lien to protect his interest in his fee agreement. Moreover, Finn never contended that Hale was not entitled to be paid; rather, his position was that the Mullen Firm was responsible for fulfilling this obligation. Finally, we cannot ignore the duty that Finn, as an officer of the court, must discharge upon receiving funds in which a third person has an interest. *See* Rule 1.15(d), RPC, Rule 407, SCACR (requiring a lawyer to promptly notify any third persons who have an interest in funds that the lawyer receives, to promptly deliver such funds accordingly, and to render a full accounting upon request).

In challenging the special referee's reliance on a constructive trust remedy, Finn has not asserted any substantive reasons as to why Hale would not be entitled to this relief based on this doctrine. In any event, we believe the special referee correctly determined the attorney's fees from the Village West lawsuit should have been held in trust pending satisfaction of Hale's claim on them and therefore acted properly in imposing a constructive trust on the portion of the funds that, in his determination, would satisfy Hale's right to quantum meruit recovery.

Finn has also taken issue with the special referee's award decision to order a quantum meruit award for a legal cause of action. There is no incongruity, however, in using an equitable measure to determine Hale's recovery on a constructive trust theory. *See Verenes v. Alvanos,* 387 S.C. 11, 17 n. 7, 690 S.E.2d 771, 774 n. 7 (2010) (noting "a constructive trust ... can arise from a breach of a fiduciary duty giving rise to the obligation in equity to make *restitution* ") (emphasis added); *id.* at 15–16, 18, 690 S.E.2d at 772–773, 774 (determining the respondent sought restitution and disgorgement on as remedies for breach of fiduciary duties and therefore rejecting the

appellant's argument that he was entitled to a jury trial because the cause of action he was defending was "primarily a legal action for money damages"). Regardless of whether the award can stand as damages for interference with contractual relations, the discretion that must be accorded to the special referee compels us to affirm the award as appropriate recompense for misconduct necessitating the imposition of a constructive trust.

## B. Punitive damages award

Finn also challenges the punitive damages award, arguing (1) he did not engage in the sort of reprehensible conduct that would justify the imposition of punitive damages; and (2) the award was based on his alleged failure to see that a debt was paid to Hale. In response, Hale contends (1) Finn failed to preserve his arguments on this issue for appeal, alleging they were raised neither in the trial court nor in any post-trial motion; (2) Finn's conduct warranted the imposition of punitive damages; and (3) Finn and Hale were fiduciaries, not debtor and creditor.

We agree with Finn that his arguments concerning punitive damages were preserved for appeal. After the special referee sent a draft order to counsel for the parties for review and comment, Finn's attorney specifically objected to the punitive damages, and the reduction of the punitive damages in the final order was tantamount to a ruling on this objection.

"Punitive damages are . . . by definition 'punishing damages' or 'private fines' levied to punish a wrongdoer for reprehensible conduct and to deter its repetition in the future." *Patterson v. I.H. Servs.*, 295 S.C. 300, 310, 368 S.E.2d 215, 221 (Ct.App.1988) (citations omitted). "The state's interests in awarding punitive damages must remain consistent with the principle of penal theory that 'the punishment should fit the crime.'" *Mitchell*, 385 S.C. at 584, 686 S.E.2d at 183 (citations omitted). "In any civil action where punitive damages are claimed, the plaintiff has the burden of proving such damages by clear and convincing evidence." S.C.Code Ann. § 15–33–135 (2005).

Previously, appellate courts in South Carolina have applied an abuse of discretion standard in reviewing a trial court's

post-judgment review of a punitive damages award; however, because of changes in federal case law, the South Carolina Supreme Court has recently adopted a de novo standard for the review of trial court determinations of the constitutionality of punitive damages awards. *Mitchell,* 385 S.C. at 583, 686 S.E.2d at 182. Adoption of this heightened standard of review is consistent with our decision in *Longshore v. Saber Security Services,* 365 S.C. 554, 619 S.E.2d 5 (Ct.App.2005), wherein this Court reversed a punitive damages award based on our determination that there was no clear and convincing evidence that the defendant's conduct was willful, wanton, or in reckless disregard of the rights of others. *Id.* at 564–65, 619 S.E.2d at 11

Although we have upheld the award of actual damages, this affirmance is based solely on our determination that the award constituted the enforcement of a constructive trust, an equitable remedy that in this State does not include the imposition of punitive damages. *See Welborn v. Dixon,* 70 S.C. 108, 118, 49 S.E. 232, 235 (1904) (stating *"punitive* damages cannot be awarded on the equity side of the court"); *Harper v. Ethridge,* 290 S.C. 112, 123, 348 S.E.2d 374, 380 (Ct.App.1986) (noting in an action involving both legal and equitable causes of action that "the evidence on punitive damages would be irrelevant to the equitable claims"). In any event, we also agree with Finn that his actions do not call for the payment of exemplary damages.[4]

The special referee described Finn's apparent disregard of Hale's right to share in the attorney's fees as "willful and reckless"; however, our review of the record in this case indicates otherwise. As the special referee found, the Mullen Firm was in charge of the actual disbursements, and Finn, at worst, "unilaterally entrust[ed] that responsibility to [the Mullen Firm]." Such behavior, though falling short of what is rightly expected of attorneys when they are handling fee disbursements, does not constitute clear and convincing evi-

---

4. None of the issues in Finn's appeal concern the propriety of awarding punitive damages when the corresponding actual damages award are equitable in nature; therefore, we base our reversal of the punitive damages award on the *Mitchell* factors.

dence of misconduct that was willful, wanton, or in reckless disregard of another's rights.

We acknowledge comments were made on Finn's behalf that what happened to Hale was "reprehensible"; however, these unfortunate remarks should not be taken as binding admissions that the alleged reprehensibility of Finn's conduct was of such a degree so as to call for punitive measures. Following the criteria set forth by the South Carolina Supreme Court in *Mitchell* to assess reprehensibility in a dispute concerning punitive damages, we find as follows: (1) the harm resulting from Finn's failure to disclose Hale's interest was economic rather than physical; (2) any breach of duty on Finn's part, therefore, cannot be found to evince an indifference to or a reckless disregard of the health or safety of others; (3) there was no evidence that Hale, aggrieved party in this case, had financial vulnerability; (4) Finn's conduct involved only an isolated incident rather than repeated actions; and (5) the harm to Hale was not the result of intentional malice, trickery, or deceit on Finn's part.[5] *See Mitchell,* 385 S.C. at 585, 686 S.E.2d at 184–85. Based on these circumstances, we reverse the punitive damages award ordered by the special referee.

II. Hale's appeal

Hale cross-appeals, contending the calculation of his damages should have been based on partnership law rather than on quantum meruit. We disagree.[6]

---

5. As to the fifth factor, we note the special referee himself acknowledged in the appealed order that he was "very impressed with the candor of Mr. Finn's testimony during the reconvened hearing, at which time he explained why he relied upon Mr. Mullen to 'take care of the Hale problem.' " Moreover, apparently based on this testimony, the special referee significantly reduced the amount of punitive damages from what he had proposed in the draft order.

6. In his proposed draft order, the special referee proposed to base his determination of actual damages based on quantum meruit. Hale did not object to this proposal, and the provision in the final order regarding actual damages is identical to that in the draft order. It is therefore questionable that the issue of whether the amount of damages should have been based on partnership law was even raised to the special referee. Furthermore, the final order never mentioned that Hale requested damages based on partnership law, much less explicitly ruled on any such request, and Hale did not move to alter or amend the

In support of his position, Hale cites the South Carolina Uniform Partnership Act, which provides that "the rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules: each partner shall ... share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied." S.C.Code Ann. § 33–41–510(1) (2006).

We have upheld the award of actual damages solely on the basis of a constructive trust doctrine. As we previously noted, the trial judge should be given discretion as to how a constructive trust, as an equitable remedy, should be enforced. Considering that such a remedy is fashioned to restore the aggrieved party to the status quo ante and that the only written agreement regarding the division of attorney's fees was between Hale and the Mullen Firm, we cannot say that an award based on quantum meruit was an abuse of discretion. *See Lollis v. Lollis*, 291 S.C. 525, 529, 354 S.E.2d 559, 561 (1987) ("A constructive trust results from fraud, bad faith, abuse of confidence, or violation of a fiduciary duty which gives rise to an obligation in equity to make *restitution.*") (emphasis added).

## CONCLUSION

As to Finn's appeal, we reverse the punitive damages award and affirm the award of actual damages on the doctrine of constructive trust. Regarding Hale's cross-appeal, we hold the special referee acted within his discretion in basing actual damages on quantum meruit.

**AFFIRMED IN PART, REVERSED IN PART.**

SHORT and GEATHERS, JJ., concur.

---

order. Nevertheless, in view of the fact that Hale did not have the opportunity to respond to concerns about error preservation, we address the issue he raised in his cross-appeal on the merits.