**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Blind Acre, Inc., Respondent-Appellant,

v.

Stash Storage Holdings, Inc., Appellant-Respondent.

Appellate Case No. 2022-000103

———————

Appeal From Charleston County
Mikell R. Scarborough, Master-in-Equity

———————

Unpublished Opinion No. 2024-UP-287
Submitted April 1, 2024 – Filed July 31, 2024

———————

**AFFIRMED**

———————

Benjamin Alexander Crute Traywick, of Ben Traywick
Law Firm, LLC, of Charleston, for
Appellant-Respondent.

George Rutledge DuRant, of Riesen DuRant, LLC, of
Mount Pleasant, for Respondent-Appellant.

———————

**PER CURIAM:** In this cross-appeal, Stash Storage Holdings, Inc. (Stash Storage) appeals the master-in-equity's (the master's) order awarding Blind Acre, Inc. (Blind Acre) $937,589.15 in damages. Blind Acre appeals, arguing the master erred in granting Stash Storage's Rule 59(e), SCRCP, motion and amending its damages

award by vacating the $1,000,000 in punitive damages awarded to Blind Acre in the original order. We affirm.[1]

**FACTS AND PROCEDURAL HISTORY**

On July 19, 2019, Blind Acre filed a complaint against Stash Storage alleging breach of contract, promissory estoppel, negligent misrepresentation, fraud, violation of the South Carolina Unfair Trade Practices Act (SCUTPA), and quantum meruit. Blind Acre alleged it executed a contract in which it agreed to provide Stash Storage marketing services for a period of thirty-six months beginning August 1, 2018. Blind Acre alleged Stash Storage agreed to pay a monthly service fee of $25,000 but failed to fulfill the terms of the contract, causing damages.

Stash Storage was personally served with the complaint on September 26, 2019, and failed to answer or otherwise respond. Blind Acre moved for an entry of default, which the circuit court entered March 21, 2021. The circuit court then granted Blind Acre's motion for a damages hearing and its request that the matter be referred to the master.

A damages hearing was held before the master on June 2, 2021. At the hearing, Scott Holtkamp, the owner of Blind Acre, testified the company was a digital marketing strategy firm hired to do marketing for Stash Storage. The contract between Blind Acre and Stash Storage was entered as an exhibit. Holtkamp stated the contract was signed August 1, 2018, for a term of thirty-six months and included a minimum monthly payment of $25,000. He agreed it was a sum certain contract and further asserted the guarantee of $25,000 per month was a material inducement for Blind Acre to sign the contract.

Holtkamp testified Blind Acre developed strategies for implementing Stash Storage's visual and marketing efforts for marketing new product lines and for growing Stash Storage's business within different markets. He stated Stash Storage represented itself to him as a company that would grow into a national and international company over time and Blind Acre was hired to help it grow.

Holtkamp stated Blind Acre employed approximately eighteen people when it signed the contract with Stash Storage. He testified he hired new employees and assigned the "top individuals" within Blind Acre to work on Stash Storage's projects. Holtkamp stated he also decreased Blind Acre's work on other projects to

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.

focus on Stash Storage's growth. He testified he would not have signed the contract with Stash Storage if it did not include the thirty-six-month guarantee.

Blind Acre entered the invoices sent to Stash Storage and a damages synopsis into evidence. Holtkamp agreed the invoices totaled $237,589.15, which reflected the amount Stash Storage owed Blind Acre from August 1, 2018, to June 15, 2019. He stated he received payments of $25,000 from Stash Storage on August 31, 2018, and January 18, 2019, but no payment for the other months of work. Holtkamp testified Blind Acre continued to fulfill its obligations under the contract despite not being paid because Stash Storage claimed "money was coming in from investors" and Tom Stevenson, who owned Stash Storage, talked him out of stopping work. He stated Blind Acre continued to invoice Stash Storage until June 2019, but it did not receive payment after January 2019. Holtkamp agreed the amount of invoiced damages minus the $50,000 paid by Stash Storage was $187,589.15. He also acknowledged Blind Acre sometimes spent over $25,000 a month on its work for Stash Storage, which was reflected on the invoices.

Holtkamp testified he discontinued invoicing Stash Storage in June 2019. He stated Blind Acre stopped "putting money into" Stash Storage in December 2018 and completely ceased working for them in February 2019 due to the lack of payment. He stated he mitigated Blind Acre's losses by not continuing with work that would have cost more than the $25,000 a month Stash Storage already owed. Holtkamp averred Stash Storage owed Blind Acre $750,000 for the thirty months left on the contract. He stated he signed the contract with Stash Storage based on the promise that they had money to pay Blind Acre and he would not have signed the contract otherwise. Holtkamp testified he was no longer able to pay all his employees because of Stash Storage's failure to pay, which led Blind Acre to eventually shut down. He stated he was still in debt as a result of Stash Storage's failure to honor its contract with Blind Acre.

On cross-examination, Holtkamp stated Blind Acre's annual revenue before 2018 was "just over or just under a million dollars" and its net profit was approximately $100,000. He explained it was difficult to move his employees back to roles working with other clients after Blind Acre stopped working with Stash Storage. Holtkamp testified Stash Storage was not Blind Acre's biggest contract and no other clients breached their contract with Blind Acre. He acknowledged that he presented the contract to Stash Storage but stated adjustments were made to the sections involving compensation "based on back and forth with Tom Stevenson." Holtkamp stated he interpreted the contract as requiring Stash Storage to pay Blind Acre a minimum fee of $25,000 a month. He testified Blind Acre invoiced Stash Storage for what was in the contract. Holtkamp acknowledged the invoices sent to

Stash Storage for March through June 2019 did not include a $25,000 fee. He did not recall why he did not invoice Stash Storage $25,000 after February 2019.

On redirect examination, Holtkamp stated he did not invoice Stash Storage $25,000 for March 2019 through June 2019 but he sent invoices for late fees. He testified Stash Storage told him multiple times it would pay Blind Acre for its work after February 2019. When questioned by the master, Holtkamp confirmed the late fees accrued every month, amounted to 18% per annum, and were included in the $187,589.15 in invoiced payments Stash Storage owed Blind Acre.

At the end of the hearing, the master granted relief to Blind Acre for breach of contract and negligent misrepresentation, awarding it $937,589.15 in actual damages and $1,000,000 in punitive damages. The master did not grant Blind Acre relief for the claims of fraud or violation of the SCUTPA, and he determined that granting Blind Acre's breach of contract claim did not require him to rule on its quantum meruit and promissory estoppel claims. The master issued an order granting $1,937,589.15 in damages to Blind Acre on June 15, 2021.

Stash Storage filed a Rule 59(e), SCRCP, motion, arguing the master erred in awarding Blind Acre damages that exceeded the invoiced sum of $187,589.15. Stash Storage also contended the evidence presented did not support the award of $1,000,000 in punitive damages to Blind Acre. Blind Acre filed a memorandum in opposition to Stash Storage's Rule 59(e) motion, arguing the master did not err in awarding $937,589.15 because the contract obligated Stash Storage to pay Blind Acre $25,000 each month for thirty-six months. Blind Acre further asserted it presented clear and convincing evidence to support the $1,000,000 punitive damages award. The master issued an order granting Stash Storage's Rule 59(e) motion as to the punitive damages and reducing Blind Acre's total damages award to $937,589.15. The master stated he determined no basis in the record supported the $1,000,000 punitive damages award to Blind Acre. This cross-appeal followed.

**STANDARD OF REVIEW**

"The trial judge has considerable discretion regarding the amount of damages, both actual [and] punitive." *Austin v. Specialty Transp. Servs., Inc.*, 358 S.C. 298, 310, 594 S.E.2d 867, 873 (Ct. App. 2004). "Because of this discretion, our review on appeal is limited to the correction of errors of law." *Id.* "Our task in reviewing a damages award is not to weigh the evidence, but to determine if there is any evidence to support the damages award." *Id.* at 311, 594 S.E.2d at 873. "Although appellate review of an award of punitive damages is limited to the correction of

errors of law, an award of punitive damages must be proven under a significant burden of proof: clear and convincing evidence." *Longshore v. Saber Sec. Servs., Inc.*, 365 S.C. 554, 564, 619 S.E.2d 5, 11 (Ct. App. 2005).

"Our scope of review for a case heard by a [m]aster-in-[e]quity who enters a final judgment is the same as that for review of a case heard by a circuit court without a jury." *Tiger, Inc. v. Fisher Agro, Inc.*, 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1989). "In an action at law, 'we will affirm the master's factual findings if there is any evidence in the record which reasonably supports them.'" *Query v. Burgess*, 371 S.C. 407, 410, 639 S.E.2d 455, 456 (Ct. App. 2006) (quoting *Lowcountry Open Land Tr. v. State*, 347 S.C. 96, 101-02, 552 S.E.2d 778, 781 (Ct. App. 2001)). "Additionally, in cases tried without a jury, 'questions regarding the credibility and the weight of evidence are exclusively for the [master].'" *Singletary v. Shuler*, 433 S.C. 600, 607, 861 S.E.2d 591, 595 (Ct. App. 2021) (alteration in original) (quoting *In re Est. of Anderson*, 381 S.C. 568, 573, 674 S.E.2d 176, 179 (Ct. App. 2009)).

## LAW AND ANALYSIS

### I. STASH STORAGE'S APPEAL

Stash Storage argues the master erred in awarding Blind Acre $937,589.15 for its breach of contract claim. It contends the evidence presented did not support the damages awarded because the record established Blind Acre was owed payment only for what was invoiced. Stash Storage asserts Blind Acre stopped invoicing because it stopped performing services and Blind Acre was not owed the $750,000 in monthly damages the master awarded because it did not invoice Stash Storage for those fees. Stash Storage points to the fact that Blind Acre did not bill $25,000 monthly on the last five invoices as indication Blind Acre recognized it was not owed those fees for those five months. We disagree.

We hold the master did not err in awarding Blind Acre $937,559.15 in damages because the record contains evidence to support the master's award for breach of contract to Blind Acre. *See Austin*, 358 S.C. at 310, 594 S.E.2d at 873 ("The trial judge has considerable discretion regarding the amount of damages, both actual [and] punitive."); *id.* ("Our task in reviewing a damages award is not to weigh the evidence, but to determine if there is any evidence to support the damages award."). Holtkamp testified he would never have entered the contract with Stash Storage if it had not promised to pay Blind Acre for its services for thirty-six months. The contract between the parties states Stash Storage would pay Blind Acre "no less than a monthly agency service fee of $25,000 in consideration of the

services performed by" Blind Acre. The contract also stated the term of the agreement would begin August 1, 2018, and continue "until terminated by either party upon thirty (30) days' prior written notice . . . , provided that this Agreement may not be terminated effective prior to the expiration of thirty-six (36) months from the Commencement Date." Blind Acre invoiced Stash Storage a total of $187,589.15 for its work and late fees. Under the terms of the contract, Stash Storage also owed Blind Acre $25,000 each month from March 2019 to August 2021, amounting to $750,000. Accordingly, we hold the master did not err in awarding Blind Acre $937,589.15 for Stash Storage's breach of contract when evidence was presented to support the damages awarded, and we affirm.

## II. BLIND ACRE'S APPEAL

Blind Acre argues the master erred in removing the $1,000,000 punitive damages originally awarded to it and in stating there was no basis in the record to support the award. It contends the master failed to provide a factual basis for his decision to remove the award. Blind Acre asserts it presented sufficient evidence of negligent misrepresentation on the part of Stash Storage to affirm the punitive damages award. We disagree.

We hold the master did not err in granting Stash Storage's Rule 59(e) motion because the record contained insufficient evidence to support an award for $1,000,000 in punitive damages to Blind Acre. *See Austin*, 358 S.C. at 310, 594 S.E.2d at 873 ("The trial judge has considerable discretion regarding the amount of damages, both actual [and] punitive."); *see also Longshore*, 365 S.C. at 564, 619 S.E.2d at 11 ("Although appellate review of an award of punitive damages is limited to the correction of errors of law, an award of punitive damages must be proven under a significant burden of proof: clear and convincing evidence."); *Solanki v. Wal-Mart Store No. 2806*, 410 S.C. 229, 236, 763 S.E.2d 615, 618 (Ct. App. 2014) ("To receive an award of punitive damages, the plaintiff has the burden of proving by clear and convincing evidence the defendant's misconduct was willful, wanton, or in reckless disregard of the plaintiff's rights."). Holtkamp testified Stash Storage represented itself to him as a business that planned to expand nationally and internationally and hired Blind Acre to help it grow through marketing. He also stated Stash Storage told Blind Acre multiple times it planned to pay Blind Acre but was gathering money from investors before it could do so. Stash Storage paid Blind Acre for its work in August 2018 and January 2019 but did not pay the other invoices or the monthly amount required by the contract. We hold the master did not err in granting Stash Storage's Rule 59(e) motion when Blind Acre failed to present clear and convincing evidence that Stash Storage's failure to fully pay it for its work was a willful, wanton, or reckless disregard of

Blind Acre's rights and not the result of Stash Storage's business failing to expand as it expected. Blind Acre did not present evidence Stash Storage lied when stating it planned to pay Blind Acre for its work or when it stated it was trying to obtain funds from investors to pay Blind Acre. Accordingly, we hold the master did not err in granting Stash Storage's Rule 59(e) motion and reversing the punitive damages award, and we affirm.

**CONCLUSION**

Based on the forgoing, the master's orders awarding $937,589.15 in damages to Blind Acre and granting Stash Storage's Rule 59(e) motion to vacate the award of $1,000,000 in punitive damages to Blind Acre are

**AFFIRMED.**

**GEATHERS, HEWITT, and VINSON, JJ., concur.**